528 A.2d 968

**COMMONWEALTH of Pennsylvania**

v.

**Luis Eogood ESPADA, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1987.

Filed June 15, 1987.

Reargument Denied July 31, 1987.

James P. Kearney, Assistant Public Defender, Pittsburgh, for appellant.

George C. Yatron, District Attorney, Reading, for Com., appellee.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for carrying a firearm without a license and owning a firearm despite being a former convict. Appellant contends that the lower court erred in denying his motion to suppress evidence because in stopping and frisking him the police violated *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We agree and, accordingly, reverse the judgment of sentence and order a new trial.*

Appellant, a Hispanic male, along with three other Hispanic males, was observed by police standing on a street corner in a high crime area of Reading. Two of the four men noticed the police car approaching and fled. Appellant and the fourth man walked toward the police car. When they reached the car, the police ordered the two to stop. They obeyed the order. After the stop, police observed an object protruding from appellant's companion's waistband. They also saw appellant place his hand in his pocket. The police frisked appellant and seized a handgun. Appellant was arrested and charged with the above-stated weapons offenses. His pretrial motion to suppress evidence was denied, and he was convicted and sentenced to two concurrent terms of two-to-five years incarceration and a fine of $250.00. This appeal followed.

■ Appellant contends that the lower court erred in denying his pre-trial motion to suppress evidence. He ar-

---

* Appellant also contends that the evidence was insufficient to support the verdict and that the verdict was contrary to the law. After a careful review of the record and the briefs submitted by the Commonwealth and appellant, we conclude that the lower court properly deemed these issues to be without merit.

gues that as the police officers' reasons for stopping him were constitutionally deficient under *Terry v. Ohio, supra,* evidence seized pursuant to the stop should have been suppressed. We agree. In reviewing an order denying a motion to suppress evidence we must determine whether the factual findings of the lower court are supported by the evidence of record. *Commonwealth v. Cavalieri,* 336 Pa. Superior Ct. 252, 254–55, 485 A.2d 790, 791 (1984). In making this determination, we may only consider the evidence of the Commonwealth witnesses and so much of the witnesses for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

■ In limited circumstances, an individual may be stopped, briefly detained, and frisked for investigatory purposes. *Commonwealth v. Prengle,* 293 Pa.Superior Ct. 64, 68, 437 A.2d 992, 994 (1981). In order for such a stop to be reasonable under the fourth amendment to the United States Constitution, the police conduct must meet two separate and distinct standards. *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1879. First, the police officer must point to specific and articulable facts which warrant the initial stop. *Id.* This standard is met "if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot...." *Commonwealth v. Hicks,* 434 Pa. 153, 158–59, 253 A.2d 276, 279 (1969). Such a conclusion may not be based upon an "unparticularized suspicion or 'hunch'." *Terry v. Ohio, supra,* 392 U.S. at 27, 88 S.Ct. at 1883. Second, if the reasons for the stop meet this standard and, therefore, it is deemed reasonable for fourth amendment purposes, a police officer may frisk the individual to search for weapons if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883. Again, such a belief must be based

upon specific and articulable facts indicating that the person frisked is armed and dangerous. *Commonwealth v. Hicks, supra* 434 Pa. at 159, 253 A.2d at 279. "[O]therwise, the talismanic use of the phrase 'for our own protection' ... becomes meaningless." *Commonwealth v. Jackson,* 359 Pa.Superior Ct. 433, 439, 519 A.2d 427, 431 (1986).

■ An otherwise reasonable search may be tainted by an illegal stop or arrest. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Johnson,* 474 Pa. 512, 379 A.2d 72 (1977); *Commonwealth v. Ruckinger,* 239 Pa.Superior Ct. 520, 362 A.2d 317 (1976). Because appellant's contention questions the legality of the initial stop under *Terry,* our analysis must center upon the reasonableness of that stop. While information sufficient to render a stop reasonable cannot be defined to a mathematical certainty, Pennsylvania courts have identified some situations that failed to meet the *Terry* standard. In *Commonwealth v. Hicks, supra* 434 Pa. at 159, 252 A.2d at 279, our Supreme Court held that evidence that the defendant matched a general description of the perpetrator of a recently reported crime and was walking near the crime scene was not enough to justify a stop absent any suspicious behavior on the part of the defendant. In *Commonwealth v. Jones,* 474 Pa. 364, 374, 378 A.2d 835, 840–41 (1977), the Court held that a police officer's admission that although the defendant's actions aroused his suspicion, he did not suspect any criminal activity, rendered a stop unreasonable under the *Terry* standard. The defendant's parking his car in a deserted parking lot late at night, absent any police suspicion that a crime had occurred, was insufficient to justify a *Terry* stop in *Commonwealth v. Greber,* 478 Pa. 63, 68, 385 A.2d 1313, 1316 (1978).

The Superior Court has made similar determinations. Judge Brosky, writing for a panel of the Court in *Commonwealth v. Marcelonis,* 284 Pa.Superior Ct. 46, 49, 424 A.2d 1384, 1386 (1981), held that evidence that the defendant was

walking in an area where police believed someone had thrown an object at their car did not justify a *Terry* stop without any irregular behavior by the defendant. In *Commonwealth v. Williams*, 287 Pa.Superior Ct. 19, 28, 429 A.2d 698, 703 (1981), we held that the defendant's presence at a late hour in an area where burglaries had been known to occur did not justify a *Terry* stop where police had no information that a crime had occurred, and the defendant had not acted in a suspicious manner. A police officer's receipt of an unsubstantiated tip that bicycles were being stolen in a neighborhood and his sighting of the defendant riding a bicycle in the area was held to be insufficient to render a stop reasonable under *Terry* in *Commonwealth v. Williams*, 298 Pa.Superior Ct. 466, 471, 444 A.2d 1278, 1280 (1982). In *Commonwealth v. Lagana*, 356 Pa.Superior Ct. 132, 135–37, 514 A.2d 179, 181–82 (1986), Judge Montemuro, writing for the Court, held that an unsubstantiated tip constituted unreasonable grounds for a *Terry* stop where the description of the perpetrator was overly general and there was no information linking the defendant with any illegal or suspicious activity. In *Commonwealth v. Jackson, supra*, 359 Pa.Superior Ct. at 439–40, 519 A.2d at 431, we held that a police officer's sighting of the defendant running toward the direction of a recently reported crime late at night carrying a gym bag was insufficient to justify a stop under *Terry*.

These cases teach that in order for a stop to be reasonable, and therefore legal, under *Terry v. Ohio, supra*, the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped. Mere presence near a high crime area, *Commonwealth v. Williams*, 287 Pa.Superior Ct. at 19, 429 A.2d at 703, or in the vicinity of a recently reported crime, *Commonwealth v. Hicks, supra; Commonwealth v. Jackson, supra*, does not justify a stop under *Terry*. Conversely, an officer's observation of irregular

behavior without a concurrent belief that crime is afoot also renders a stop unreasonable. *Commonwealth v. Jones, supra.*

Here, the police officers' testimony at the suppression hearing revealed that they had no suspicion that criminal activity was afoot prior to stopping appellant, nor did they observe any unusual behavior by appellant until after the stop occurred:

Q. [Defense counsel] Why did you call to them?

A. [Arresting officer] Why did I call to them? I wanted to find out who they were.

Q. Had they done anything up to that point—

A. No.

Q. —to be considered illegal that you know of?

A. Not that I know of at that point, no.

Q. But you just called to them, asked them to stop?

A. Yes.

Q. Why?

A. I think I testified to the fact we had three shootings there, 75 drug arrests, numerous complaints from the neighbors, drugs bought and sold on a regular basis at that location. I keep very close tabs on who frequents that area.

Q. Was [appellant] ever arrested for any of those things?

A. I have no idea, sir.

Q. [his companion]?

A. I have no idea if they were arrested at that location before.

Q. So you stopped them just because they were standing there on the street?

A. Yes. To find out what their intentions were there.

N.T. March 12, 1986 at 17. Additionally, the police officers testified that appellant walked *toward* the police car after

he sighted them. N.T. March 12, 1986 at 7. This cannot be construed as suspicious behavior.

■ Despite the testimony of the police officers, the lower court found that "the police officers, upon initially observing the unusual and suspicious conduct of defendant in a high crime area, reasonably believed that criminal activity was afoot, and upon further observing the conduct of defendant when confronted by police, reasonably believed that defendant was armed and dangerous." Lower Court Opinion, December 29, 1986 at 9. This finding was in error. Indeed, appellant's only suspicious act, reaching into his pocket, occurred *after* he was stopped by police. N.T. March 12, 1986 at 17–18. Such a subsequent observation cannot provide grounds for the antecedent *Terry* stop. *Terry v. Ohio, supra,* 392 U.S. at 17, 88 S.Ct. at 1877. In sum, it appears that appellant was stopped simply due to his presence in a high crime area. The fourth amendment, however, protects people, not places, *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), and its protections extend to people walking on the public streets. *Terry v. Ohio, supra* 392 U.S. at 9, 88 S.Ct. at 1873. We are sympathetic to the need for rigorous police investigation in light of the often dangerous conditions existing in our cities. We cannot, however, tolerate police conduct which, in effect, "declare[s] that in the administration of the criminal law the end justifies the means." *Olmstead v. United States,* 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1927) (BRANDEIS, J., dissenting).

We, therefore, hold that the lower court erred in concluding that the police stop of appellant was legal pursuant to the standard of *Terry v. Ohio, supra.* Because this stop violated the fourth amendment to the United States Constitution, evidence seized pursuant to it must be suppressed. *Id.* 392 U.S. at 29, 88 S.Ct. at 1883. Accordingly, we reverse the judgment of sentence and order a new trial.

Reversed. New trial ordered. Jurisdiction is relinquished.