675 A.2d 718

COMMONWEALTH of Pennsylvania, Appellant,

v.

Joan McGraw BOWERSOX, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Leroy George BOWERSOX, Appellee.

Superior Court of Pennsylvania.

Submitted March 21, 1996.

Filed April 23, 1996.

Daniel E. Holmes, Assistant District Attorney, Williamsport, for Commonwealth, appellant.

Lee A. Ciccarelli, Williamsport, for appellees.

Before POPOVICH, SAYLOR and EAKIN, JJ.

POPOVICH, Judge:

■ The Commonwealth appeals the order of the Court of Common Pleas of Lycoming County granting the appellees' motions to suppress evidence.[1] We affirm.[2]

■ Initially, we note that when reviewing the Commonwealth's appeal from the decision of the suppression court, "we must consider only the evidence of the ... appellees' witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Baer*, 439 Pa.Super. 437, 654 A.2d 1058, 1058 (1995) (citation omitted).[3] "If the evidence supports the factual findings of the trial court, we are bound by such findings, and we may reverse only if the legal conclusions

1. In this case, charges were brought against Leroy George Bowersox and Joan McGraw Bowersox. Because the issues in both cases were identical, this Court granted the Commonwealth's motion to consolidate the appeals.

2. In its statement of jurisdiction, the Commonwealth certifies that the suppression order substantially handicaps or effectively terminates its prosecution of the case. This permits appellate review of the suppression order. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

3. In its brief, the Commonwealth misstates our standard of review. The Commonwealth mistakenly asserts that "[i]n determining whether the findings [of fact] are supported by the record, the court should consider only the evidence of the appellant and so much evidence of the appellee which remains uncontradicted." Commonwealth's Brief p. 10. As discussed previously, in reviewing the Commonwealth's appeal from the decision of the suppression court, we consider only the evidence of the appellees' witnesses and so much of the evidence for the appellant which remains uncontradicted.

drawn therefrom are in error." *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968, 969 (1987) (citation omitted).

After a careful review of the record, we are satisfied that the trial court's factual findings are supported by the record.[4] However, we are compelled to note several important omissions from the trial court's summary of the salient facts.

On April 22, 1994, Police Officer Randy Eddinger was on patrol duty in Hughesville, Pennsylvania. While on duty, he was patrolling the area near the Uni–Mart in Hughesville. At around 9:45 p.m., he was parked next to the Uni–Mart. While he was in his vehicle, Officer Eddinger observed the appellees' vehicle as it pulled into the parking lot of the Uni–Mart. After the vehicle was parked, the officer observed that a male exited the vehicle from the driver's seat and went into the store. A female passenger and three children, who were seated in the back seat, remained in the vehicle. While the male was in the Uni–Mart, the officer saw the female passenger turn and stare at his police cruiser several times. After approximately three minutes, the male came out of the store and the female climbed over the console in the vehicle to the driver's seat, and pointed at the male to get into the passenger's seat. The female then drove the car out of the parking lot. The officer followed the vehicle. Although he did not witness any actual traffic violations, Officer Eddinger immediately activated his cruiser's lights to stop the appellees' vehicle. The vehicle pulled over. The officer then approached the vehicle and requested identification from the female driver and the male passenger. The male indicated that he didn't have a valid driver's license because it had been suspended. When questioned, the female stated that she knew that the

4. The Commonwealth argues that the trial court erred because its findings of fact are not supported by the record. Specifically, the Commonwealth states that "[t]he trial court's finding of fact with which the Commonwealth disputes is [the court's finding] that the officer's observations simply rose to the level of suspicion based upon an intuition or mere hunch." Commonwealth's Brief p. 11. We find that this is not a finding of fact. Rather, the trial court's statement that the officer's suspicion was based on a mere hunch is a conclusion of law. Therefore, the Commonwealth's dispute is actually in regard to the trial court's conclusions of law and not its findings of fact.

male did not have a valid driver's license but that she permitted him to drive to the Uni–Mart because she did not want to "fight with him" over who was going to drive. The officer then issued a citation to the male for driving while his operator's privilege was suspended or revoked.[5] He also issued a citation to the female, the male's wife, for permitting the male to drive while his operator's privilege was suspended or revoked.[6]

Following a hearing held before the district justice, the appellees were found guilty of the charged offenses. Timely appeals were made to the Court of Common Pleas of Lycoming County, and the appellees filed motions to suppress all statements and evidence obtained as a result of the stop of their vehicle. The lower court granted the appellees' motions to suppress all statements and evidence. This appeal followed.

The Commonwealth contends that the trial court erred in concluding that Officer Eddinger did not have articulable and reasonable grounds to suspect or probable cause to believe that appellant was violating the Vehicle Code when Officer Eddinger stopped the appellees' vehicle. After a careful review of the record, the parties' briefs and the applicable law, we disagree with the Commonwealth's contention.

■ "When [a] police [officer] stop[s] a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants, are considered "seized" and this seizure is subject to constitutional constraints." *Commonwealth v. Knotts*, 444 Pa.Super. 60, 663 A.2d 216, 218 (1995) (citation omitted). Here, when Officer Eddinger stopped the appellees' vehicle on April 22, 1994, the appellees and their vehicle were clearly "seized." Accordingly, we must determine whether the seizure was justified.

■ The issue regarding the standard to be applied when reviewing an officer's stop of a vehicle for a Vehicle Code

5. 75 Pa.C.S.A. § 1543(a).
6. 75 Pa.C.S.A. § 1543(a).

violation has been the subject of rather recent appellate scrutiny. "Confusion had arisen in recent case law as to whether, in order to stop a vehicle for a traffic violation, the officer must possess 'probable cause to believe' or a 'reasonable suspicion to believe' that a violation of the Vehicle Code had occurred." *Commonwealth v. Hamilton*, 543 Pa. 612, 673 A.2d 915, 918 (1996). In *Hamilton*, our supreme court again addressed the issue of the standard to be applied when a police officer stops a vehicle for a traffic violation. The court concluded that a "police officer ... may stop a vehicle whenever ... [he has] articulable and reasonable grounds to suspect that a violation of the Vehicle Code has occurred." *Id.* 673 A.2d at 918 (citation omitted). Accordingly, we must determine whether the information available to Officer Eddinger at the time he stopped the appellees' vehicle created reasonable grounds to suspect that a violation of the Vehicle Code had occurred.[7]

Here, the officer who stopped appellees' vehicle never specifically articulated the basis for the stop. However, from the officer's testimony at the suppression hearing, it can be inferred that the officer stopped the vehicle because he "suspected" that a violation of the Vehicle Code had occurred based on activities he observed on April 22, 1994. The officer testified that he observed a male drive into a Uni–Mart parking lot and exit his vehicle. He further observed a female passenger looking in the direction of his cruiser several times. Finally, he observed that when the male exited the Uni–Mart, the female passenger climbed over the console in the vehicle

7. The Commonwealth asserts that the trial court erred because it did not consider the testimony "of the officer from an objective viewpoint based upon his training, observations and experience." Commonwealth's Brief p. 8. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that in determining whether an officer is justified in conducting a brief stop, the court must determine whether the officer had articulable and reasonable grounds to justify the stop based on the officer's special skills and training. Assuming *arguendo* that the trial court did not view the testimony in this manner, our application of this standard to the facts of this case leads us to conclude that the trial court did not err in finding that the officer had insufficient reasonable suspicion to justify a stop of the appellees' vehicle.

into the driver's seat, and pointed at the male to get into the passenger's seat. When the vehicle drove out of the parking lot, the officer followed it and stopped it. The officer further testified that he did not observe any violations of the Vehicle Code from the time the vehicle entered the Uni–Mart parking lot until he stopped the vehicle after it had left the parking lot. Based on the totality of these circumstances, we cannot find that Officer Eddinger had articulable and reasonable grounds to suspect that a violation of the Vehicle Code had occurred.

We have held that an officer need not establish that an actual violation of the Vehicle Code has occurred prior to stopping a vehicle. *Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030 (1995). Therefore, the fact that Officer Eddinger did not actually observe a violation of the code prior to stopping the appellees' vehicle does not preclude a finding that the vehicle was stopped properly. However, in the absence of an actual violation, the officer must provide a reasonable basis for his belief that the Vehicle Code was being violated in order to validate the stop. *Benton, supra.* This reasonable basis must be "linked with his observation of suspicious or irregular behavior on behalf of the particular . . . individuals stopped." *Espada*, 528 A.2d at 970. Moreover, the reasonable basis necessary to justify a stop is less stringent than probable cause, but the detaining officer must have more than a mere hunch as the basis for the stop. *In Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172, 174 (1993).

Keeping these standards in mind, we must agree with the trial court's conclusion that the circumstances in this case were not specific instances of unusual and suspicious conduct on the part of the appellees that could have reasonably led Officer Eddinger to conclude that the Vehicle Code was being violated. Simply put, the fact that the female appellee looked at the officer's cruiser several times, and relinquished the passenger's seat to the male appellee cannot be construed as unusual and suspicious conduct. Officer Eddinger's mere hunch that a violation of the vehicle code may have occurred was insufficient to justify stopping the appellees' vehicle.

For all of the foregoing reasons, the trial court's order suppressing the evidence is affirmed.

Order Affirmed.