**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Charles D. PALMER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 2000.
Filed April 19, 2000.

James F. Geddes, Wilkes-Barre, for appellant.

Frank P. Barletta, Asst. Dist. Atty., Hazelton, for Com., appellee.

Before EAKIN, JOYCE and TAMILIA, JJ.

JOYCE, J.:

¶ 1 This is an appeal from the judgment of sentence, as made final by the denial of post-sentencing motions,[1] entered after Appellant, Charles Palmer, was convicted of driving while under the influence of alcohol.[2] For the reasons set forth below, we vacate the judgment of sentence, reverse the suppression ruling and remand for further proceedings. Before addressing the merits of Appellant's claims, we

---

1. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 658 A.2d 395, 397 (1995), *appeal quashed,* 543 Pa. 6, 669 A.2d 877 (1995) and Pa.R.Crim.P. 1410. and comment thereto (providing that judgment of sentence becomes final for purposes of appeal when the trial court disposes of defendant's post-sentencing motion).

2. 75 Pa.C.S.A. § 3731(a)(1).

will recount the pertinent facts giving rise to this appeal.

¶ 2 During the early morning hours of July 10, 1998, Sergeant Michael Kasper was on routine patrol in a marked police cruiser when he spotted a woman, who was a known prostitute, walking past an auto parts store. The officer then saw a green Ford sport utility vehicle operated by Appellant pull into the store parking lot. Appellant briefly conversed with the woman. She then walked away; Appellant proceeded to turn back onto the street and drove past Sergeant Kasper's vehicle.

¶ 3 Sergeant Kasper believed that Appellant was William Powell, a male whom the police purportedly knew did not have a valid driver's license because his operating privileges had been suspended.[3] Consequently, Sergeant Kasper activated his lights and signaled Appellant to stop. Appellant complied. Sergeant Kasper approached Appellant's vehicle and asked Appellant for his driver's license and registration. He detected an odor of alcohol emanating from Appellant. According to the officer, Appellant identified himself as "Fred" Palmer and provided his date of birth. Upon checking, the officer was apprised that there was no license on file with that name and date of birth.

¶ 4 Sergeant Kasper asked Appellant to exit the vehicle. Appellant again complied. At this point, the officer realized that Appellant was not William Powell, who was known to be shorter than Appellant. Believing that Appellant was intoxicated, the officer asked Appellant to recite the alphabet and perform field sobriety tests. Appellant failed the tests. As a result, he was arrested and charged with various offenses arising out of this incident. Appellant did not consent to blood-alcohol testing.

¶ 5 Appellant filed an omnibus motion to suppress the evidence due to the illegality of the stop. Following a hearing, the trial court denied Appellant's motion. Appellant thereafter waived his right to trial by jury. A bench trial was held in June of 1999, following which the trial judge convicted Appellant of the above offense.[4] Appellant was subsequently sentenced to a period of one (1) month to twelve (12) months' imprisonment. Appellant timely filed post-sentencing motions which the trial court denied. Appellant timely appealed and presents the following issues for review: (1) whether the trial court erred in denying Appellant's suppression motion; and (2) whether the evidence was sufficient to sustain his conviction.

¶ 6 Appellant contends that his suppression motion should have been granted because Sergeant Kasper lacked articulable and reasonable grounds to stop Appellant. Appellant's Brief at 12. With regard to this issue, we recognize that:

> When we review the ruling of a suppression court, we must first ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error.

*Commonwealth v. Petroll*, 558 Pa. 565, 574–75, 738 A.2d 993, 998 (1999) (citation

---

3. Sergeant Kasper was not personally acquainted with William Powell, but had obtained his information from other officers. However, it appears that the individual whose operating privileges were revoked was Steven Powell rather than William Powell. N.T. Suppression, 6/9/99, at 34–40.

4. Appellant was later acquitted of the summary offense of driving while his operating privilege was suspended or revoked.

omitted). *Accord Commonwealth v. Korenkiewicz*, 743 A.2d 958, 962 (Pa.Super.1999) (*en banc*). If there is sufficient evidence of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge. *Commonwealth v. Marinelli*, 547 Pa. 294, 315–316, 690 A.2d 203, 214 (1997), *cert. denied*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998); *Korenkiewicz, supra.* We will evaluate Appellant's suppression claims with these precepts in mind.

■ ¶ 7 A police officer may stop a vehicle whenever he or she has articulable and reasonable grounds to suspect that a provision of the Motor Vehicle Code has been violated. 75 Pa.C.S.A. § 6308(b). An officer need not establish that an actual violation of the Motor Vehicle Code occurred prior to stopping a vehicle. *Commonwealth v. Bowersox*, 450 Pa.Super. 176, 675 A.2d 718, 721 (1996). In the absence of an actual violation, however, the officer must provide a reasonable basis for his belief that the Motor Vehicle Code was being violated in order to validate the stop. *Id.*

■ ¶ 8 At the suppression hearing, Sergeant Kasper testified that he observed Beth Jordan, a known prostitute, walking along Main Street. N.T. Suppression, 6/9/99, at 4–5. He saw a green Ford sport utility vehicle, possibly a Ford Bronco, pull into a parking lot at which time the operator of the vehicle began conversing with Ms. Jordan.[5] *Id.* at 4–6. After Ms. Jordan walked away, the driver of the vehicle pulled onto the street. *Id.* at 5–6. Sergeant Kasper did not observe Appellant operate his vehicle in a manner that would constitute a violation of the Motor Vehicle Code. N.T. Suppression, 6/9/99, at 25. Rather, the sole basis for the stop was his belief that Appellant was William Powell. *Id.* at 7.

¶ 9 Sergeant Kasper had neither met, spoken with nor stopped William Powell. *Id.* at 22–23 and 32. Based on information provided by his fellow officers, however, Sergeant Kasper knew that William Powell was an African–American male, in his late 20s to early 30s, who drove or owned a white BMW and did not have a valid driver's license. *Id.* at 8, 22–24 and 32–33. In addition, Powell was known to converse with prostitutes and frequent the area in which Appellant was stopped. *Id.* at 9. Sergeant Kasper only caught a glimpse of the driver of the green Ford for a few seconds. *Id.* at 10, 21–22 and 24. He nonetheless believed that Appellant was Powell because of their similar ages and the fact that they were both African–American males. *Id.* at 9.

¶ 10 Review of the above testimony does not support the trial court's conclusions regarding the validity of the stop. The officer had no knowledge of William Powell's appearance, aside from his general age group, race and the fact that he was known to own a white BMW. Appellant was not driving a white BMW at the time he was stopped. In fact, Sergeant Kasper could not identify any characteristic that Appellant had in common with Powell aside from his race, a trait that is shared by all African–American males in the City of Wilkes–Barre.

¶ 11 "Driving while black" is not among the violations identified in the Motor Vehicle Code. Because the officer's identification of Appellant was predicated solely upon a vague racial description, we agree with Appellant that articulable and reasonable grounds for the stop did not exist. Consequently, the stop was invalid and all evidence flowing therefrom should have been suppressed as fruits of the unlawful

---

5. In an attempt to justify the validity of the stop, the Commonwealth misrepresents the facts by asserting that Appellant was driving a white BMW when he was stopped. Commonwealth's Brief at 2 and 5. Contrary to the Commonwealth's assertions, Sergeant Kasper's suppression hearing testimony clearly reflects that Appellant drove a green Ford sport utility vehicle rather than a white BMW. N.T. Suppression, 6/9/99, at 4–6.

stop. *See, e.g., Commonwealth v. Hamilton*, 543 Pa. 612, 618–620, 673 A.2d 915, 918–919 (1996) (holding that trial court properly suppressed evidence where officer did not possess articulable and reasonable grounds to suspect that defendant violated Motor Vehicle Code; the officer did not see defendant drive erratically, commit a traffic violations or engage in any conduct indicating that he was under the influence of alcohol); *Commonwealth v. Whitmyer*, 542 Pa. 545, 552–553, 668 A.2d 1113, 1117–1118 (1995) (finding stop based on alleged violation of 75 Pa.C.S.A. § 3361 invalid where there was no outward indication that defendant was driving at an unsafe speed; consequently, suppression of the fruits of the stop was proper); *Commonwealth v. Nagle*, 451 Pa.Super. 16, 678 A.2d 376, 378–379 (1996) (reversing denial of suppression motion; stop was invalid where the officer did not personally observe the defendant commit any traffic violations and had only vague information from nearby residents that the operator of a green truck was driving up and down a particular section of roadway); *Bowersox*, 675 A.2d at 721–722 (finding that officer lacked articulable and reasonable grounds to suspect that Motor Vehicle Code was violated where defendant did not commit any traffic violations and no other conduct suggesting that a violation of the Motor Vehicle Code was observed); *Commonwealth v. Knotts*, 444 Pa.Super. 60, 663 A.2d 216, 219–220 (1995) (concluding that evidence derived from unlawful stop thus should have been suppressed where tip from anonymous informant was inadequate to support stop of defendant and the trooper did not observe defendant commit any Motor Vehicle Code violations). *But compare Korenkiewicz*, 743 A.2d at 965–966 (upholding validity of stop where officer had specific information from an identified informant that defendant was either ill or intoxicated).

¶ 12 Although we are of the view that Appellant's first claim entitles him to relief, we are nonetheless constrained to address his challenge to the sufficiency of the evidence as a retrial would be precluded in the event this issue has merit. *Commonwealth v. Brachbill*, 520 Pa. 533, 537, 555 A.2d 82, 84 (1989). In evaluating the sufficiency of the evidence, we do not review a diminished record. *Commonwealth v. Smith*, 523 Pa. 577, 582, 568 A.2d 600, 603 (1989); *Commonwealth v. Parker*, 435 Pa.Super. 81, 644 A.2d 1245, 1247 (1994), *appeal denied*, 540 Pa. 630, 658 A.2d 793 (1995). Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings were correct. *Smith* and *Parker, supra.* Where improperly admitted evidence has been considered by the trier-of-fact, its subsequent deletion does not justify a finding of insufficient evidence; the remedy in such a case is the grant of a new trial. *Smith* and *Parker, supra.*

> In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted). We will examine the Commonwealth's evidence in light of this standard.

¶ 13 Appellant was convicted of driving while under the influence of alcohol to a degree that rendered him incapable of safe driving. 75 Pa.C.S.A. § 3731(a). In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving. *Commonwealth v. Verticelli*, 550 Pa. 435, 448, 706 A.2d 820, 826 (1998); *Commonwealth v. Downing*, 739 A.2d 169, 173 (Pa.Super.1999). To establish the second element, it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle. *Commonwealth v. Montini*, 712 A.2d 761, 768 (Pa.Super.1998). Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. *Id.* Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving. *Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90, 95 (1995) (*en banc*), *affirmed*, 546 Pa. 139, 683 A.2d 289 (1996); *Commonwealth v. Kowalek*, 436 Pa.Super. 361, 647 A.2d 948, 952 (1994).

¶ 14 Sergeant Kasper's testimony from the suppression hearing was incorporated into the record for purposes of trial. N.T. Trial, 6/10/99, at 9 and 26. At the suppression hearing, Sergeant Kasper testified that Appellant exuded an odor of alcohol. N.T. Suppression, 6/9/99, at 11. In addition, the officer observed that Appellant had glassy, bloodshot eyes. N.T. Suppression, 6/9/99, at 11; N.T. Trial, 6/10/99, at 14. Because Appellant had provided false information regarding his identity, he was asked to exit the vehicle. N.T. Suppression, 6/9/99, at 12; N.T. Trial, 6/10/99, at 13. Upon exiting, Appellant had some difficulty in walking, as he touched the side of his vehicle while walking towards its rear. N.T. Suppression, 6/9/99, at 13.

¶ 15 Sergeant Kasper had participated in prior DUI arrests and, based on his observations, believed Appellant to be intoxicated. N.T. Suppression, 6/9/99, at 13 and 29; N.T. Trial, 6/10/99, at 12 and 25. Consequently, he asked Appellant to recite the alphabet and perform standard field sobriety tests. N.T. Suppression, 6/9/99, at 14–15; N.T. Trial, 6/10/99, at 14 and 16–17. Appellant failed the tests. N.T. Suppression, 6/9/99, at 15; N.T. Trial, 6/10/99, at 17–19 and 25. Appellant then became belligerent after he was placed under arrest. N.T. Suppression, 6/9/99, at 15; N.T. Trial, 6/10/99, at 25. Based on his observations of Appellant and Appellant's failure of the field sobriety tests, Sergeant Kasper opined that Appellant was under the influence of alcohol to a degree that rendered him incapable of safe driving. N.T. Trial, 6/10/99, at 22 and 25.

¶ 16 As noted by this Court, a police officer who has perceived a defendant's appearance and acts is competent to express an opinion as to the defendant's state of intoxication and ability to safely drive a vehicle. *Feathers*, 660 A.2d at 95. Given the officer's training, experience and observations, the evidence submitted by the Commonwealth was sufficient to sustain Appellant's DUI conviction. *See, e.g., Feathers*, 660 A.2d at 96 (defendant's glassy eyes, slurred speech, odor of alcohol, inability to stand without support and failure of field sobriety tests was sufficient to support DUI conviction); *Kowalek*, 647 A.2d at 952 (defendant's bloodshot eyes, slurred speech, strong odor of alcohol, difficulty in producing driver's license and registration and failure of field sobriety tests deemed sufficient to support DUI conviction).

¶ 17 As we previously determined that the trial court's legal conclusions regarding

the validity of the stop are unsupported by the record, we reverse the order denying Appellant's suppression motion. In light of our disposition, we vacate the judgment of sentence and remand for a new trial at which the evidence derived from the stop shall not be used.

¶ 18 Judgment of sentence vacated. Suppression order reversed. Remanded for further proceedings. Jurisdiction relinquished.