J-A32019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

Appellant

v.

JOEL G. INGS

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2253 EDA 2015

Appeal from the Order June 26, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011613-2012

BEFORE:  DUBOW J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY RANSOM, J.:                          **FILED MARCH 09, 2017**

The Commonwealth of Pennsylvania appeals from the June 26, 2015 order granting Appellee's motion to suppress physical evidence.  We affirm.

In September 2012, Joel G. Ings, Appellee, was arrested and charged with possession of a controlled substance and possession with intent to distribute.[1]  In June 2014, Appellee filed a motion to suppress physical evidence, namely, narcotics recovered in conjunction with the arrest.  In the motion, Appellee averred that police lacked reasonable suspicion or probable cause to stop him, and the narcotics discarded in his ensuing flight from police were the fruits of an illegal seizure.  A suppression hearing was held on June 26, 2015, before the Honorable Sean F. Kennedy.  That same day,

_____

[1] 35 Pa.C.S. §§ 780-112(a)(16), and 780-112(a)(30), respectively.

* Retired Senior Judge assigned to the Superior Court.

upon hearing the testimony of the Commonwealth's only witness, arresting officer Jeffrey Opalski ("Officer Opalski"), the court granted Appellee's motion to suppress. Thereafter, in July 2015, the Commonwealth filed a notice of appeal and a Pa.R.A.P. 1925(b) statement. The lower court reviewed the suppression hearing transcript and issued supplemental findings of facts and conclusions of law in January 2016. In February 2016, the court issued a responsive opinion, which incorporated its findings of facts and conclusions of law.

On appeal, the Commonwealth raises the following issue for our review:

> 1. Where officers patrolling a high[-]crime area asked [Appellee] to stop, and he responded by fleeing on his bicycle, did the lower court improperly suppress the crack cocaine that he abandoned mid-flight?

Commonwealth's Brief at 4.

When reviewing the propriety of a suppression order, we are required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Peterson*, 17 A.3d 935, 937 (Pa. Super. 2011) (citing *Commonwealth v. Moyer*, 954 A.2d 659, 663 (Pa. Super. 2008). Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id*.

- 2 -

On appeal, the Commonwealth raises a single issue for our review, alleging the court improperly suppressed the narcotics Appellee discarded in flight from the police. We have reviewed the certified record, the briefs of the parties, the applicable law, and the well-reasoned opinion authored by the Honorable Sean F. Kennedy of the Court of Common Pleas of Philadelphia County, filed February 18, 2016. We conclude that Judge Kennedy's comprehensive opinion is dispositive of the issue presented in this appeal. Accordingly, we adopt the opinion as our own for purposes of further appellate review and affirm the order granting Appellee's suppression motion on that basis.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/2017



IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

FILED

FEB 18 2016

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA   :     CP-51-CR-0011613-2012

                         :

          v.               :

                         :     SUPERIOR COURT

JOEL G. INGS                :     NO. 2015

KENNEDY, SEAN F., J.                      FEBRUARY 15, 2016

## PROCEDURAL HISTORY

On September 2, 2012, Joel Ings (the Defendant) was arrested and charged with possession of a controlled substance (possession) and possession with intent to distribute (PWID).[1] On June 10, 2014, the Defendant filed a motion to suppress physical evidence, namely, narcotics, recovered by the police, contending that the police lacked reasonable suspicion or probable cause to stop him and the item discarded in his subsequent flight with the police in pursuit where the fruits of an illegal seizure. A suppression hearing was held before this Court on June 26, 2015. At that time, the Commonwealth presented the testimony of Philadelphia Police Officer Jeffrey Opalski (Officer Opalski). The Defendant presented no testimony.

CP-51-CR-0011613-2012 Comm. v. Ings, Joel G G.
Opinion

7408371741

---

[1] 35 Pa.C.S. § 780-112(a)(16) and 35 Pa.C.S. § 780-112(a)(30), respectfully.

After hearing Officer Opalski's testimony and personally observing him testify, this Court granted the Defendant's motion to suppress and ordered the narcotics suppressed.[2] On July 27, 2015, the Commonwealth filed a notice of appeal, as well as a 1925(b) statement, challenging the Court's suppression ruling. Upon receipt of the Commonwealth's notice of appeal and 1925(b) statement, the Court ordered the June 26, 2015 suppression hearing transcript. Following a review of the suppression hearing transcript, this Court issued supplemental findings of fact and conclusions of law, which were filed on January 15, 2016.[3]

## FACTS

On September 2, 2012, Officer Opalski and his partner, Officer Murray, were in plain clothes and an unmarked vehicle, on routine patrol in the 19th District.[4] N.T. 6/25/2015 at 5-6. On said date, Officer Opalski had obtained information that a week prior to September 2, 2012, several gunpoint robberies were reportedly committed by two suspects – described as black males, five-ten to six feet, thin build – at bus stops off of 54th Street, in the area of 54th and Berks Street.[5] Id. at 5-6, 12. Officer Opalski was looking out for these alleged robbery suspects during his patrol. Id. at 5-6.

Officer Opalski saw the Defendant at approximately 1:00 a.m. Id. At that time, Officer Opalski was patrolling in the area 56th and Berks Street, heading southbound on 56th Street and

---

[2] The Court's findings and conclusion were stated on the record. See, N.T. 6/26/2015 at 17-20.

[3] The supplemental findings of fact and conclusions of law are incorporated as though fully set forth herein. (Courtesy copy attached hereto). Although the supplemental findings and conclusions were clearly designated as such, the filing was erroneously docketed as a 1925(b) Opinion.

[4] As of September 2, 2012, Officer Opalski had been a Philadelphia Police Officer for two years. N.T. 6/26/2012 at 8. The summer of 2012 was his first experience out in the District. Id. During that summer, Officer Opalski and his partner had close to 20 gun arrests. Id.

[5] Officer Opalski testified that he did not personally investigate the week-old crimes or prepare any reports relative to said crimes; he obtained the information regarding the crimes from the white papers disseminated through the 19th District. Id. at 12-13.

2

the Defendant was at 55th and Berks Street, riding a bicycle westbound, towards 56th Street.[6] Id. at 5, 6, 11-12, 14. The Defendant turned northbound on 56th Street and came by the driver's side of the officers' vehicle, which was facing southbound, windows down and at that point, the officers yelled "police," flashed their badges and ordered the Defendant to stop.[7] Id. at 7.

Officer Opalski had not observed the Defendant engage in any criminal activity before he ordered the Defendant to stop. Id. at 13. The Defendant looked in the direction of Officer Opalski and continued to peddle northbound on 56th Street, behind the officers' vehicle.[8] Id. at 7. The officers pursued the Defendant. Id. During the pursuit, Officer Opalski saw the Defendant throw a glass jar to the ground. Id. The officers apprehended the Defendant at 56th and Arlington Streets.[9] Id. Officer Opalski returned to the area where he saw the Defendant throw the glass jar. Id. at 7-8. He recovered a glass jar containing crack cocaine. Id. at 8. The Defendant was arrested.[10] Id.

ISSUE

The Commonwealth's contends that the Court erred in granting the Defendant's motion to suppress and in suppressing the narcotics discarded by the Defendant, asserting:

---

[6] Officer Opalski claimed that in the darkness of night, as he was heading southbound on 56th Street and the Defendant was riding a bicycle westbound towards 56th Street, he noticed a bulge in the Defendant's front waistband that could have been a gun and further, he observed that the Defendant matched the description of the week-old robbery suspects. Id. at 6-7. This Court found said testimony to be not credible. N.T. 6/26/2015 at 18-20; Supplemental Findings at nos. 14-16.

[7] Officer Opalski did not indicate that he was responding to a crime in progress when he saw the Defendant or when he ordered the Defendant to stop. In fact, Officer Opalski testified that he did not see the Defendant engage in any criminal activity before he ordered the Defendant to stop. Id. at 13. Officer Opalski's testimony demonstrated that his reason for stopping the Defendant was the information he possessed regarding the week-old robberies. Id. at 5-7.

[8] On cross examination, Officer Opalski testified that as the Defendant pulled alongside of the unmarked vehicle's window and as he passed the unmarked vehicle, he maintained the same pace of motion. Id. at 13.

[9] The Defendant did not possess a gun. Id. at 15.

[10] Subsequent to the Defendant's arrest, Officer Opalski completed a 75-229, based on information he had obtained from the Defendant. Id. at 9-10. The Defendant reported that he was six feet tall and that he resided at 5876 Malvern Road, which was approximately four blocks from where the events in question took place. Id. at 10, 15. The Defendant's reported address indicated that he resided in the neighborhood where the events in question occurred. Id. at 15.

3

Plainclothes police officer investigating a series of gunpoint robberies within 2 blocks of their location saw defendant, who matched a flash description of the robbery suspect, approaching on a bicycle with a bulge in his waistband area, at approximately 1 a.m.; the officers called to defendant to come over to them and in response he fled and, while doing so, threw drugs on the ground. The issue on appeal is whether the lower court erred in granting defendant's motion to suppress the drugs he abandoned.

1925(b) Statement.

## DISCUSSION

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court, from those findings, are appropriate. Commonwealth v. Peterson, 17 A.3d 935, 937 (Pa.Super. 2012) (quoting Commonwealth v. Moyer, 954 A.2d 659, 663 (Pa.Super. 2008). Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Id.

It is within the suppression court's sole province to pass on the credibility and weight to be given to testimony. Commonwealth v. Elmbody, 823 A.2d 180, 184 (Pa.Super. 2003). The suppression court is free to believe all, part or none of the evidence presented at the suppression hearing. Id. "[C]redibility at a suppression hearing is an important determination best resolved through the suppression court's personal observations. An appellate court will not reverse a suppression court's assessment of credibility absent a manifest abuse of discretion." Commonwealth v. Camacho, 625 A.2d 1242, 1245 (Pa.Super. 1993).

Moreover, the suppression court has the duty to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot. Commonwealth v. Holmes, 14 A.3d 89, 96 (Pa. 2011).

4

The appellate courts look to the factual findings made by the suppression court, recognizing that those findings are dependent on the suppression court's credibility determinations. In the Interest of L.J (L.J.), 79 A.3d 1073, 1085 (Pa.Super. 2013).

> When we state that part of our "task" is to determine whether the record supports the suppression court's factual findings, this is another way of expressing that our standard of review is highly deferential to the suppression court's factual findings and credibility determinations. In other words, if the record supports the suppression court's findings, we many not substitute our own findings. [Commonwealth v.] Hughes, 836 A.2d [893,] at 898 [Pa. 2003] ("[w]here the record supports findings of the suppression court, we are bound by those facts.") (citation omitted). In stark contrast, our standard of review of the suppression court's legal conclusions is de novo: the appellate courts give no deference to the suppression court's legal conclusions. Commonwealth v. Brown, 996 A.2d 473, 476 (Pa. 2010).

L.J., 79 A.3d at 1080 n. 6.

The Fourth Amendment of the United States Constitution and Article 1, § 8 protect against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1 (1968); Commonwealth v. Hicks, 253 A.2d 276, 280 (Pa. 1969). Among the protections is the requirement that an officer have reasonable suspicion that criminal activity is afoot and that the person seized in involved in such activity before an investigative stop. In re M.D., 781 A.2d 192, 196 (Pa.Super. 2001) (citing Terry, 392 U.S. at 30; Hicks, 253 A.2d at 280); See also, Commonwealth v. Ranson, 103 A.3d 73 (Pa.Super. 2014); Commonwealth v. Taggart, 997 A.2d 1189 (Pa.Super. 2010); · Commonwealth v. Martinez, 588 A.2d 513 (Pa.Super. 1991); Commonwealth v. Espada, 528 A.2d 968 (Pa.Super. 1987).

Where "a citizen approached by a police officer is ordered to stop ... obviously a 'stop' [seizure] occurs." Ranson, 103 A.3d 73, 77 (Pa.Super. 2014) (quoting Commonwealth v. Jones, 378 A.2d 835, 839 (Pa. 1977)). Furthermore:

5

Under Pennsylvania law, any items abandoned by the individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigative stop. Stated another way, when one is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered the product of coercion and is not admissible.

Taggart, 997 A.2d at 1193 (Pa.Super. 2010) (quoting In re M.D., 781 A.2d at 196 (Pa.Super. 2001) (internal citations and quotation marks omitted); See also, Ranson, 103 A.3d at 77 ("[A]s pursuit by police constitutes a seizure under the law of this Commonwealth, a person may be seized even though he is moving away from the police.") (citing Commonwealth v. Matos, 679 A.2d 769 (Pa. 1996).

In determining whether a police officer had reasonable suspicion, the court must examine the totality of circumstances. Ranson, supra; Taggart, supra; In re M.D., supra; Martinez, supra; Espada, supra. The officer must be able to articulate specific facts which led him reasonably to suspect that criminal activity was afoot and that the person seized was involved in that activity. Id. Reasonable suspicion depends on the information possessed by the officer, and its degree of reliability. Ranson, 103 A.3d at 78; Taggart, 997 A.2d at 1193; In re M.D., 781 A.2d at 196; Martinez, 588 A.2d at 516; Espada, 528 A.2d at 970. In assessing the totality of circumstances, the court must give due weight to the specific reasonable inferences drawn from the facts in light of the police officer's experience.[11] Ranson, 103 A.3d at 77; In re M.D., supra.

Although information sufficient to render a stop reasonable cannot be defined to a mathematical certainty, Pennsylvania case law clearly establishes that "in order for a stop to be

---

[11] "Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our [courts] remain mindful that the officer's 'judgment is necessarily colored by his or her primary involvement in the often competitive enterprise of ferreting out crime.'" Commonwealth v. Reppert, 814 A.2d 1196, 1204 (Pa.Super. 2002) (citing In re D.E.M, 729 A.2d 570, 578 n.19 (Pa.Super. 1999) (quoting Terry, 332 U.S. at 11-12).

6

reasonable, and therefore legal, under <u>Terry v. Ohio</u>, <u>supra</u>, the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped."[12] <u>Espada</u>, 528 A.2d at 970; See also, <u>Ranson</u>, <u>supra</u>; <u>Taggart</u>, <u>supra</u>; <u>In re M.D.</u>, <u>supra</u>; <u>Martinez</u>, <u>supra</u>. "Conversely, an officer's observation of irregular behavior without a current belief that a crime is afoot also renders a stop unreasonable. <u>Espada</u>, <u>supra</u> (citing <u>Jones</u>, 378 A.2d at 840-841).

Instantly, the suppression record consists of the testimony of the Commonwealth's witness, Officer Opalski. At the conclusion of Officer Opalski's testimony, this Court granted the Defendant's motion to suppress. The Court concluded that an investigative stop occurred when the officers identified themselves as police, flashed their badges and ordered the Defendant to stop. (N.T. 6/26/2015 at 7, 17; See also, Supplemental Findings/Conclusions, 1/15/2016, at 2, 5). This conclusion is consistent with Pennsylvania case law. <u>Jones</u>; <u>Ranson</u>.

This Court found that under the particular facts of this case, an objectively reasonable police officer would not have reasonably suspected criminal activity was afoot and that the Defendant was engaged in criminal activity. The Court considered the totality of the circumstances giving due weight to the reasonable inferences Officer Opalski was entitled to draw from the facts, in light of his experience. (N.T. 6/26/2015 at 18-20; See also, Supplemental

---

[12] A police officer's observation of the defendant in a high crime area or in the vicinity of recently reported crimes did not justify an investigative stop where the officer had no information of a crime in progress and the defendant had not acted in a suspicious manner. <u>Espada</u>, 528 A.2d at 970; <u>Commonwealth v. Jackson</u>, 519 A.2d 427 (Pa.Super. 1986); <u>Commonwealth v. Williams</u>, 444 A.2d 1278 (Pa.Super. 1982); <u>Commonwealth v. Williams</u>, 429 A.2d 698 (Pa.Super. 1981). An unsubstantiated tip constituted unreasonable grounds for an investigative stop where the description of the perpetrator was overly general and there was no information linking the defendant with any suspicious or illegal activity. <u>Commonwealth v. Lagana</u>, 514 A.2d 179 (Pa.Super. 1986). A police officer's observation of the defendant on a known drug corner, coupled with the officer's observation of a nondescript bulge in the defendant's pocket, constituted unreasonable ground for an investigative stop where the officer had no information of a crime in progress and the defendant had not acted in a suspicious manner. <u>Commonwealth v. Martinez</u>, 588 A.2d 513 (Pa.Super. 1991). In <u>Martinez</u>, the Superior Court explained that an officer's belief that a person might be armed cannot serve as an additional articulable fact to justify an initial stop absent sufficient articulable facts to reasonably warrant a belief that criminal activity is afoot. <u>Id</u>. at 516 (citing Hicks, 253 A.2d at 279).

7

Findings/Conclusions, 1/15/2016, at 2-6). Based thereon, this Court determined that Officer Opalski did not demonstrate a reasonable belief that criminal activity was afoot and that the Defendant was engaged in criminal activity at the time the Defendant was ordered to stop. (N.T. 6/26/2015 at 20; See also, Supplemental Findings/Conclusions, 1/15/2016, at 4-5). Accordingly, this Court concluded that the contraband discarded by the Defendant was the fruit of an illegal investigative stop and subject to suppression. (N.T. 6/26/2015 at 20; See also, Supplemental Findings/Conclusions, 1/15/2016, at 5-6).

In reaching a determination, this Court found Officer Opalski's testimony to be not credible to the extent he testified that he ordered the Defendant to stop because he observed that the Defendant matched the description of suspects in the week-old robberies. [N.T. 6/26/2015 at 6-7, 12] and that he observed a bulge in the Defendant's waistband [N.T. 6/26/2015 at 6-7, 14]. (N.T. 6/26/2015 at 18-19; See also, Supplemental Findings/Conclusions, 1/15/2016, at 3-5). Notwithstanding this Court's rejection of Officer Opalski's testimony as not credible, the Commonwealth relies on said testimony in support of its appeal. (1925(b) Statement).

The Commonwealth had the burden of establishing at the suppression hearing that the challenged evidence was not obtained in violation of the Defendant's constitutional rights. Camacho, 625 A.2d at 1245 (citing Commonwealth v. Bonasorte, 486 A.2d 1361, 1368 (Pa.Super. 1987)). This Court determined that the testimony of Officer Opalski did not credibly establish reasonable suspicion justifying the investigative stop. Given this determination, there is no basis for a reversal of the Court's suppression ruling. Camacho, 625 A.2d at 1246. As discussed more fully below, the Court's credibility determination is supported by the record and does not constitute a manifest abuse of discretion.

8

Presumably, in an effort to dissuade the Superior Court of the propriety of this Court's rejection of Officer Opalski's testimony, the Commonwealth's 1925(b) statement misrepresents and misstates the facts of this case. A review of the record reveals no support for the Commonwealth's implication that on September 2, 2012, Officer Opalski was investigating a crime in progress and/or its assertion that the officers called to the Defendant to come over to them and in response, he fled. A review of Officer Opalski testimony reveals the following relevant facts.

On September 2, 2012, Officer Opalski possessed information that a week before September 2, 2012, gunpoint robberies had reportedly been committed by two suspects –both described as black males, five-ten to six feet, thin build – at bus stops off of 54th Street, in the vicinity of 54th and Berks Street. (N.T. 6/26/2015 at 6, 12). Officer Opalski did not personally investigate the week-old robberies or prepare any reports pertaining to the robberies; rather, he had just obtained the information from the white papers disseminate through his District. (N.T. 6/26/2012 at 12-13). Based on this information, Officer Opalski was looking out for the suspects during his patrol. (N.T. 6/26/2012 at 5-7). At approximately 1:00 a.m., Officer Opalski saw a single black male, the Defendant, at 55th and Berks Street; the Defendant was riding a bicycle westbound towards 56th and Berks Street. (N.T. 6/26/2015 at 6-7). The Defendant turned northbound on 56th Street, riding his bicycle along the driver's side of Officer Opalski's unmarked vehicle, windows down and as he did, Officers Opalski and Murray announced police, showed the Defendant their badges and told the Defendant to stop. The Defendant looked in the direction of Officer Opalski and began to peddle faster northbound. (N.T. 6/26/2015 at 7). At the point the officers commanded the Defendant to stop, Officer Opalski had not seen the Defendant engage in any criminal activity. (N.T. 6/26/2015 at 13). Officer Opalski did not

9

indicate that he observed irregular or suspicious behavior on the Defendant's part or anyone's part.

As noted above, this Court concluded that an investigative stop occurred when the officers ordered the Defendant to stop. The Court did not find the Defendant's alleged flight to be an additional factor to be considered in determining reasonable suspicion since the Defendant's flight occurred after the investigated stop and therefore, did not constitute a ground for reasonable suspicion justifying the investigative stop. Taggart; Martinez. As further indicated above, determined that the testimony of Officer Opalski did not credibly establish reasonable suspicion justifying the investigative stop.

This Court had the duty to independently evaluate Officer Opalski's testimony to determine whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot. Holmes. Officer Opalski's credibility was an important consideration in this Court's evaluation of the facts. This Court considered Officer Opalski's testimony in its entirety and personally observed Officer Opalski's demeanor as he testified. The Court examined the totality of the circumstances, including reasonable inferences, in light of Officer Opalski's experience as a police officer. The Court did not find that Officer Opalski's testimony had the "ring of truth."

When Officer Opalski stopped the Defendant on September 2, 2012, Officer Opalski was not investigating or responding to a crime in progress; rather, he was relying on information that a week before September 2, 2012, gunpoint robberies had been committed at bus stops, off of 54th Street, by two suspects described as black males, 5-10 to 6 feet, thin build. The flash description of the suspects was very general and vague at best, with a low degree of reliability. Officer Opalski knew that the flash description had little to no value in the ethnic neighborhood

10

where the robberies occurred as evinced by his testimony that any number of males residing in the neighborhood where the robberies occurred would fit the description of the suspects. (N.T. 6/26/2012 at 11).

To justify an investigative stop, Officer Opalski needed more than the vague flash description. Officer Opalski's testimony did not indicate that he attempted to corroborate additional facts before stopping the Defendant. At the time Officer Opalski stopped the Defendant, the Defendant had done nothing more than ride a bicycle in the vicinity of a week-old crime.

The Court did not accept Officer Opalski's testimony that he was able to determine the Defendant's height to be between five-ten and 6 feet and his testimony that he observed a bulge in the Defendant's waistband under the circumstances he described – in the darkness of night, while the Defendant was seated, riding a bike westbound from 55th Street towards 56th Street and Officer Opalski was riding in a vehicle traveling southbound on 56th Street.

Additionally, Officer Opalski did not describe the alleged bulge in any details. He did not testify that he believed the bulge was a gun; rather, he testified that he thought the bulge could have been a gun. He also testified that the bulge could have been a large cell phone.

As indicated above, Officer Opalski admitted that he had not observed the Defendant engage in any criminal activity and he did not point to any irregular or suspicious behavior on the part of the Defendant. Officer Opalski did not indicate that the Defendant was observed with another tall, thin black male and/or that the Defendant was observed at or near bus stops, on or off 54th Street, as described in the prior robberies.

In view of the above, this Court submits that the Commonwealth's appeal is without merit and accordingly, it should be denied and dismissed.

11

## CONCLUSION

WHEREFORE, this Court respectfully submits that the order granting the Defendant's

motion to suppress be affirmed on appeal.

BY THE COURT:

_____

SEAN F. KENNEDY, J.

12