J-S32034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES MICHAEL LYONS | : | |
| | : | |
| Appellant | : | No. 135 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 20, 2019,
in the Court of Common Pleas of Bucks County,
Criminal Division at No(s): CP-09-CR-0003616-2019.

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED OCTOBER 6, 2020**

James Michael Lyons appeals from the judgment of sentence imposed after the trial court found him guilty of driving under the influence – general impairment and failure to drive within traffic lane.[1] Upon review, we affirm.

On May 20, 2019, police arrested and charged Lyons with driving under the influence – general impairment, failure to maintain minimum speed,[2] and failure to drive within traffic lane. The trial court set forth the evidence presented at trial as follows:

The Commonwealth called Sergeant Richard Tucholski as its first witness. Sergeant Tucholski has been employed for approximately sixteen years with the Hilltown Township Police Department. Sergeant Tucholski has the following training and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §3802(a)(1) and 75 Pa.C.S.A. § 3309(1).

[2] 75 Pa.C.S.A. § 3364(a).

experience in regards to DUI matters: (1) municipal police officer's training, (2) standardized field sobriety training, and (3) approximately 400 various classes dealing with subjects driving under the influence of drugs and alcohol. Sergeant Tucholski testified that he was working the night of May 15, 2019 at approximately 1:00 a.m. Sergeant Tulchoski testified that he was in full uniform and operating a marked patrol unit. Sergeant Tucholski testified that he was in the area of 2004 Hilltown Pike when he observed a Sport Utility Vehicle (SUV) with its hood up parked in the far lot of Crossroads Tavern. Sergeant Tucholski noted that Crossroads Tavern was dark and no lights were on inside. Sergeant Tucholski deemed the activities of the SUV as suspicious because the Crossroads Tavern seemed to be closed. Sergeant Tucholski later testified that he identified [Lyons] as the driver of the SUV.

As [Lyons] was driving through the parking lot and exiting towards the main road, Sergeant Tucholski noted that the SUV's lights were extinguished. Sergeant Tucholski decided to follow [Lyons] to obtain a license plate in case there was a further issue at the Crossroads Tavern. Sergeant Tucholski followed [Lyons] southbound on Hilltown Pike, which is a 45-mile-an-hour two lane roadway. Sergeant Tucholski observed [Lyons] weaving within the lane and also jerking back and forth rapidly. Utilizing his Vascar Plus 3C Unit, Sergeant Tucholski obtained two speeds of the SUV, 29 miles per hour and 31 miles per hour. Sergeant Tucholski testified that driving under the posted speed limit, especially at that time of night, led him to believe that [Lyons] was under the influence. Sergeant Tucholski also testified that as [Lyons] was headed towards a curve, [Lyons] continued straight instead of turning with the curve and almost drove off of the roadway. Before [Lyons] almost drove off of the roadway, the-SUV crossed into the northbound lane. In addition to the swerving, [Lyons] braked erratically. While [Lyons] was continuing southbound towards Township Line Road towards a traffic signal, Sergeant Tucholski utilized the Vascar Plus 3C Unit to obtain [Lyons'] driving speed again. [Lyons'] driving speed was 18 miles per hour and the posted speed limit was 45 miles per hour. Sergeant Tucholski testified that [Lyons] approached a greenlight at Township Line Road and almost came to a complete stop at the intersection. As [Lyons] continued through the intersection, Sergeant Tucholski activated his overhead lights and conducted a traffic stop of Lyons' SUV.

In the courtroom, Sergeant Tucholski proceeded to identify [Lyons] [] as the driver of the SUV. Sergeant Tucholski testified that on the night in question, [Lyons] produced his Pennsylvania driver's license. Sergeant Tucholski testified that he made physical observations of [Lyons] when [he] exited the car to retrieve the SUV's title from the back seat upon Sergeant Tucholski's request to see the SUV's registration. Sergeant Tucholski noted that [Lyons] was unsteady on his feet and while talking to [him], Sergeant Tucholski detected a strong odor of alcohol coming from [Lyon's] breath. Sergeant Tucholski also testified that [Lyons'] speech was slurred and that [he] had red, watery eyes. Sergeant Tucholski testified that [Lyons] stated that he had three beers and that he had drank his last beer prior to leaving the Crossroads Tavern. When Sergeant Tucholski asked [Lyons] what time of night it was, [he] was unable to give Sergeant Tucholski an answer.

Sergeant Tucholski testified that he asked [Lyons] to submit to a field sobriety test. Sergeant Tucholski testified that [Lyons] did not agree to take the tests and instead [Lyons] put his arms out and said, 'Take me to jail.' Sergeant Tucholski further testified that he tried to reason with [Lyons] but [he] sat down on the ground behind the SUV and told Sergeant Tucholski to take him away. [Lyons] continued to refuse to submit to a DUI field sobriety test. Sergeant Tucholski testified that he believed that [Lyons] was incapable of safely operating a vehicle safely and therefore helped [Lyons] up off the ground and placed [him] into custody.

As Sergeant Tucholski was placing [Lyons] into custody, he became belligerent. As Sergeant Tucholski obtained a PA DL -26 PennDot Implied Consent Form and read the form to [Lyons], he told Sergeant Tucholski to 'Go fuck yourself,' in excess of twenty times. Ultimately, [Lyons] refused to submit to a blood test.

[Lyons] signed the form denoting his refusal to sign. Sergeant Tucholski transported Appellant to Perkasie Police Department and Lyons was processed on live scan. After being processed, Sergeant Tucholski transported [Lyons] to his residence. During his transport home, [Lyons] admitted to drinking Yuengling. The Commonwealth admitted into evidence, C-4, which is Sergeant Tucholski's body camera footage that captured the moment from the beginning of the stop of [Lyons'] SUV until [he] refused to submit to a blood test. After Sergeant Tucholski finished his testimony, the Commonwealth rested.

Defense counsel called [Lyons] as its first witness. [Lyons] testified that he was operating the SUV. [Lyons] testified that the SUV that he was driving was a 6.1 Hemi Jeep and it was capable of 0 mph to 60 mph in 4.6 seconds. Appellant testified that he was driving under the speed limit for two good reasons: (1) Hilltown Pike is in 'ill repair' and he had to drive to the conditions that exist on the road and (2) the Jeep that he was driving was so low to the ground that [] he did not want to break anything on the undercarriage of the Jeep. [Lyons] also admitted to drinking three beers from the hours of 7:00 p.m. to 1:00 a.m. and to having one beer right before he began driving that night. [Lyons] stated that he believed that Sergeant Tucholski 'had an immediate agenda and bias[]. He was hell bent on trying to prove me a drunk and I wouldn't have it, quite frankly.' [Lyons] stated that he did not submit to the field sobriety test because he believed that Sergeant Tucholski would use his judgment and say that [he] had failed it. [Lyons] also stated that his back hurt sometimes, and that would have affected his balance. [Lyons] testified that he had been awake since 6:00 a.m. and was tired and that was the reason why his speech was slurred and his eyes were red and watery.

On cross-examination, Lyons stated that he would never take a blood test and the best way to clear his name would have been a breath test because '[i]t was good enough to convict me the last time. Why wasn't it offered to me this time to clear me?' No other witnesses were called and the Defense rested.

Trial Court Opinion, 2/7/20, at 1-5 (citations and footnotes omitted). The trial court found Lyons guilty of DUI and failure to drive within traffic lane. The trial court sentenced him to not less than 14 days of incarceration to no more than 6 months of incarceration and imposed the mandatory fine of $300.

Lyons filed this timely appeal. The trial court and Lyons complied with Pennsylvania Rule of Appellate Procedure 1925.

Lyons raises the following single issue for our review:

A. Whether the evidence was insufficient to sustain [Lyons'] conviction for driving under the influence when the evidence failed

to establish that [Lyons'] had imbibed a sufficient amount of alcohol to render him incapable of driving safely?

Lyons Brief at 4.

In his only issue, Lyons challenges the sufficiency of the evidence to support his DUI conviction. Specifically, he claims that the evidence was insufficient to show that he drank a sufficient amount of alcohol to render him substantially impaired and incapable of driving safely. Lyons' Brief at 14, 18.

In reviewing a sufficiency claim, we must consider "whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt." **Commonwealth v. Cash**, 137 A.3d 1262, 1269 (Pa. 2016) (citation omitted). "The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence." **Commonwealth v. Newton**, 994 A.2d 1127, 1131 (Pa. Super. 2010), *appeal denied,* 8 A.3d 898 (Pa. 2010) (citations omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013). Only "where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." **Commonwealth v.**

*Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

The Crimes Code provides:

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §3802(a)(1). To demonstrate that an individual is rendered incapable of safely driving "it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000) (citing *Commonwealth v. Montini*, 712 A.2d 761, 768 (Pa. Super. 1998)). "'[T]he focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.'" *Commonwealth v. Griffith*, 32 A.3d 1231, 1238 (Pa. 2011) (quoting *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009)). "Substantial impairment … means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." *Palmer*, 751 A.2d at 228. "The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety

tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech." *Segida*, 985 A.2d at 879.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to prove beyond a reasonable doubt that Lyons was substantially impaired so as to render him incapable of safely operating the vehicle that night. In its Pa.R.A.P. 1925(a) opinion, the trial court detailed the evidence which supported its conviction of Lyons for DUI-general impairment. Particularly, we note that the trial court found the officer, who had 16 years of experience, to be credible. "[A] police officer who has perceived a defendant's appearance and conduct is competent to express an opinion as to the defendant's state of intoxication and ability to safely drive a vehicle." *Commonwealth v. Palmer*, 751 A.2d at 228 (citing *Commonwealth v. Feathers*, 660 A.2d 90, 95 (Pa. Super. 1995)). "[A] police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008). In contrast, the trial court did not find credible Lyons' excuses for his erratic driving and blood shot eyes. As noted above, when assessing the credibility of witnesses, "the trier of fact is free to believe all, part, or none of the evidence." *Newton*, 994 A.2d at 1131. Additionally, the body camera footage offered into evidence at trial enabled the court to observe first-hand what transpired that night.

After considering the record, the parties' briefs, the trial court's opinion and applicable law, we conclude that further discussion by this Court is not necessary. Accordingly, we adopt the trial court's opinion regarding Lyons' sufficiency claim. In the event of future proceedings, the litigants shall attach a copy of the trial court's opinion to any filings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/06/2020