J-S28040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD BROOKS | : | |
| | : | |
| Appellant | : | No. 992 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004438-2021

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **September 29, 2023**

Appellant Richard Brooks appeals from the judgment of sentence entered on March 29, 2022, in the Court of Common Pleas of Allegheny County following his conviction at a non-jury trial on the charge of Driving Under the Influence – General Impairment ("DUI"). After a careful review, we affirm.

The relevant facts and procedural history are as follows: On February 24, 2021, Appellant was arrested by West Mifflin Borough Police Officer Joseph Hoffman ("Officer Hoffman") after a car accident with Alexander Scalise. At the March 29, 2022 non-jury trial, the Commonwealth presented the testimony of Mr. Scalise and Officer Hoffman.

_____

[*] Former Justice specially assigned to the Superior Court.

Mr. Scalise testified on direct examination that he was involved in a crash with Appellant on February 24, 2021. N.T. at 9. He testified that he was driving on the right-hand sight of a two-lane road, each lane one way. Appellant pulled out of a gas station through traffic and crossed a double yellow line in front of Mr. Scalise, leaving no reaction time and resulting in a collision with Mr. Scalise's vehicle. N.T. at 9. Mr. Scalise's vehicle rolled over Appellant's vehicle and went up an embankment, struck a telephone poll and overturned. N.T. at 9-10.

On cross examination, Mr. Scalise estimated that he was driving 35 or 40 miles per hour. N.T. at 11. He said he did not attempt to brake his vehicle because there was absolutely no time to react to Appellant pulling out in front of him while in the process of a turn. N.T. at 14. He said it was daylight at the time of the accident and that it was likely cloudy. While he couldn't recall if the road was wet, it was not snowing or storming. N.T. at 12.

Officer Hoffman testified on direct examination that he had been employed nineteen years and estimated having made 120 DUI arrests at the time he responded to this incident. N.T. at 16. He responded to the scene of the crash between Appellant and Mr. Scalise where he observed a Jeep Grand Cherokee overturned on its driver's side and a Dodge Ram positioned eastbound after the impact, both having disabling damage. N.T. at 16. Officer Hoffman identified Appellant as the operator of the Dodge Ram and Mr. Scalise

as the operator of the Jeep Grand Cherokee. N.T. at 17. Appellant had been making a left turn out of Marathon Gas Station onto Lebanon Church Road where the collision occurred. N.T. at 17.

Upon making contact with Appellant, Officer Hoffman detected a "very strong odor of an alcoholic beverage emanating from him." N.T. at 17. Appellant stated that he was not injured. N.T. at 17. Officer Hoffman believed Appellant was under the influence of alcohol that impaired his ability to operate his motor vehicle that day based on "the accident itself; the violation committed; [and] . . . the strong odor of alcohol." N.T. at 18. Officer Hoffman asked Appellant if he would submit to a field sobriety test to which Appellant agreed. N.T. at 18.

The first test was the one-legged stand in which Appellant was instructed to stand on his left leg with his right leg up and count to fifteen. N.T. at 18. By or before the count of three, Appellant had to put his right foot back down on the ground for balance. Because Appellant seemed unsteady, Officer Hoffman did not have Appellant make a second attempt and considered this a "fail." N.T. at 19. The second test was the finger to nose test in which Appellant was instructed to stand with both legs together, tilt his head back, bring his arms up to shoulder-height, close his eyes, and then touch one index finger to the top of his nose. N.T. at 19. Appellant confused his left and right finger more than once during this test, so it was considered a "fail." N.T. at

19. The third test was the walk and turn in which Appellant was instructed to stand with his arms at his side and walk nine steps heel-to-toe and then return to the officer in the same line. N.T. at 20. Appellant performed "adequate" on this test, but because he had failed two out of three, Officer Hoffman still suspected him of driving under the influence. N.T. at 20. At the scene, Appellant said he would not consent to a blood draw to determine blood alcohol content, and after arriving at Jefferson Hospital, Officer Hoffman read Appellant the "DL-26 form" which explains the legal consequences of not submitting to a blood draw. N.T. at 20-21. Appellant acknowledged and signed the form, still declining a blood test. N.T. at 21. Through all of officer Hoffman's training and experience, he opined that Appellant was incapable of safely operating the vehicle due to being under the influence of alcohol based on the above observations. N.T. at 23.

On cross examination, Officer Hoffman said that Appellant had admitted to having drank earlier in the evening but could not recall how much earlier Appellant said he had consumed the drinks. N.T. at 24. Officer Hoffman then demonstrated the one-legged stand in court for thirteen counts. N.T. at 25-26. Officer Hoffman then described the damage to the vehicles, indicating that the Dodge Ram had damage to the front passenger side, and the Jeep was overturned on the driver's side. N.T. at 27. He said that no breathalyzer test was offered because his department always does blood tests. N.T. at 29.

The defense called Ed Goldbach, a friend of Appellant who testified that Appellant had been with him prior to the accident at Mr. Goldbach's father's auto body shop at which Mr. Goldbach is self-employed. N.T. at 31. The auto body shop is three doors down on the same road, or walking distance, from the gas station outside of which the accident occurred. N.T. at 31. Mr. Goldbach testified that he and Appellant are friends, and that Appellant occasionally works on his truck at Mr. Goldbach's auto body shop. On the date of the crash, Mr. Goldbach recalls Appellant being there to work on his truck for approximately three to four hours and testified that he did not observe Appellant consume any alcohol while there. N.T. at 32. He testified that Appellant left with his vehicle and then returned not long after asking for help and stating his truck had just been hit. N.T. at 32. Appellant and Mr. Goldbach returned to the scene, but because the police and fire engine were already on scene, Mr. Goldbach did not help Appellant with the truck on scene. N.T. at 32-33. There was no cross examination of this witness. N.T. at 33.

Appellant testified in his own defense that on February 24, 2021, he had been at Ed's Body and Frame working on the front brakes, rotating the tires, and changing the oil in his truck for approximately five to six hours. N.T. at 38. He testified that he had "a couple of beers during the course of the day" while at the body shop, specifying that he had two twelve-ounce Miller Light cans. N.T. at 39. He said he likely had the drinks when "we took a break." N.T. at 40. He stated that he was not intoxicated when he left the shop. After

finishing his truck, he went to get gas at Marathon Gas Station and had no problems traveling to or arriving at the gas station. N.T. at 40. Appellant testified that when leaving the gas station, there was heavy, "bumper-to-bumper" rush hour traffic, an elderly woman waved him on, and he did not see anyone when he looked right so he pulled forward and was then struck by Mr. Scalise's vehicle. N.T. at 40-41.

Appellant testified about his performance on the field sobriety tests and said that he made the officer aware that due to a neck injury he sustained in 1984 for which he receives veterans' disability, he could not do some of the things he was asked to do, N.T. at 41-42, and that he wasn't in his right mind after the accident while doing the tests. N.T. at 43. Appellant admitted that he refused the blood draw at the hospital because he is "needle phobic" but stated he would have had no problem had he been offered a breath test. N.T. at 42. He stated that his mental state after the crash was "anxious, panic," and that the next day he had a swollen face and possibly a minor concussion because his head slammed off his door during the crash. N.T. at 42-43. There was no cross examination of Appellant. N.T. at 43.

At the conclusion of the trial, the court found Appellant guilty of Driving Under the Influence and acquitted the defendant of the underlying traffic violation, Vehicle Turning Left. N.T. at 48. On April 8, 2022, Appellant timely filed a post-sentence motion which was denied by operation of law on August

10, 2022. On August 25, 2022, Appellant timely filed a notice of appeal. On September 12, 2022, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal which Appellant filed on September 26, 2022. On December 8, 2022, the trial court filed a responsive opinion. This appeal followed.

In his first issue, Appellant contends the evidence was insufficient to sustain his conviction for DUI-general impairment.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010). (citations omitted). Here, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence sufficiently

establishes Appellant's consumption of alcohol substantially impaired his ability to safely operate the vehicle.

Section 3802(a)(1) of the Vehicle Code provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa.Super. 2000). To establish the second element, the Commonwealth must show that alcohol has

> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Id.* (citations and footnote omitted).

Here, it was established by the Commonwealth through the testimony of Officer Hoffman that Appellant was the operator of the Dodge Ram and Mr. Scalise was the operator of the Jeep Grand Cherokee. N.T. at 17. Appellant contends that the Commonwealth did not prove beyond a reasonable doubt that Appellant's alcohol consumption impaired his ability to operate his vehicle safely. We disagree. As the trial court aptly noted, Appellant admitted to having consumed alcoholic beverages prior to operating his vehicle. Appellant was involved in a crash which the trial court found was caused after Appellant pulled out of the gas station "without first ensuring that it was safe to do so." Tr. Ct. Op. at 6. The court was free to rely on wholly circumstantial evidence in coming to this conclusion as the fact-finder. Shortly after the accident, Appellant emanated a strong odor of alcohol and failed two out of three sobriety tests. Tr. Ct. Op. at 6. Officer Hoffman's nearly two decades of experience led him to believe that Appellant could not safely operate his vehicle. N.T. at 23. These facts taken together are sufficient to support the trial court's conclusions.

Appellant's reliance on ***Commonwealth v. Gause***, 164 A.3d 532 (Pa.Super. 2017), is not persuasive. The reason for the interaction between the officer and the appellant in the ***Gause*** case was because the officer had stopped the vehicle because of its malfunctioning taillights. ***Id.*** at 535. There were no indications that the defendant could not operate the vehicle safely, including no evidence of erratic driving as the officer had been following the

defendant. The first indication to the officer that the defendant had been driving intoxicated was the smell of alcohol coming from the defendant. *Id.* Here, the lack of evidence of erratic driving is not because Officer Hoffman had been following Appellant and observed none, but because Officer Hoffman did not have the ability to observe Appellant's driving before the crash. The reason for the interaction between Officer Hoffman and Appellant was because the Officer was called to the scene of a crash. Some facts of the *Gause* case and this case are analogous in that certain tell-tale signs of impairment were missing in both appellants, the field sobriety tests were performed by each appellant with varying levels of success, and both appellants admitted to consuming some alcohol. *Id*. But when the analysis calls for a totality of the circumstances, as here, and the *Gause* case involves similar circumstances resulting in insufficient evidence to sustain a conviction while this case involves similar circumstances *as well as* a car crash, the fact that the totality of the circumstances analysis produces the opposite result is sound.

Appellant argues in his brief and reasserts in his reply brief that his DUI conviction is inconsistent with his acquittal of Vehicle Turning Left. Appellant's Br. at 20-21; Appellant's Reply Br. at 5. Appellant argues that this inconsistency indicates that the Commonwealth did not prove beyond a reasonable doubt that he was unable to operate his vehicle safely. Appellant states, "the Trial Court overlooked the critical fact that it acquitted Mr. Brooks of Vehicle Turning Left. In other words, the accident was determined to be the

product of sheer happenstance and bad luck, not the result of Mr. Brooks unsafe driving." Appellant's Br. at 21. However, "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence[.]" *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015). It is well-settled that "inconsistent verdicts are permissible in Pennsylvania." *Commonwealth v. States*, 938 A.2d 1016, 1025 (Pa. 2007).

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count [] is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

*Talbert*, 129 A.3d at 545. We have already determined that there was sufficient evidence to support the trial court's verdict regarding the DUI conviction. *See U.S. v. Powell*, 469 U.S. 57, 66 (1984) (stating that "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."); *see also Commonwealth v. Cook*, 865 A.2d 869, 877 (Pa.Super. 2004) ("It is well-settled that juries may render inconsistent verdicts. Pursuant to Pa. R. Crim.

- 11 -

P. [620],[1] judges have the same powers as juries when a jury trial is waived. Accordingly, a judge, in a non-jury trial, has the power to render inconsistent verdicts. As such, this Court will not disturb a guilty verdict based on apparent inconsistencies as long as there is sufficient evidence to support the verdict.")

Based on the aforementioned, and applying our standard of review, we conclude the evidence was sufficient to establish Appellant's consumption of alcohol substantially impaired his ability to safely operate the vehicle.

In his second claim on appeal, Appellant contends the trial court's verdict as to the DUI offense is against the weight of the evidence. Specifically, Appellant argues the trial court's finding that the cause of the February 24, 2022 crash was the result of his consumption of alcohol shocks one's sense of justice.

When considering challenges to the weight of the evidence, we apply the following precepts: "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." **Talbert**, 129 A.3d at 545 (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. **Commonwealth**

---

[1] The predecessor to Pa.R.Crim.P. 620, Rule 1101, was renumbered on March 1, 2000.

*v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert, supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id*.

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim, and we find no abuse of discretion in this regard. We note the trial court was free to determine the weight of the fact that Appellant admitted to consuming alcohol that day and smelled of alcohol against the weight of Appellant's testimony that he only had two beers. The trial court was free to give no weight to the testimony of Mr. Goldbach because it found his testimony to not

- 13 -

be truthful. This is supported by the fact that Mr. Goldbach testified that Appellant had been in his presence at the auto body shop and did not observe Appellant drink any beer, yet Appellant admitted that while at Mr. Goldbach's he consumed two beers. Also, the trial court was free to draw inferences about Appellant's ability to safely operate the vehicle from the testimony describing the crash and from Officer Hoffman's testimony of his own observations.

To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we emphasize that it is a task that is beyond our scope of review. See **Commonwealth v. Collins**, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Accordingly, the trial court's verdict was not against the weight of the evidence.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023

- 14 -