J-S33026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NYIVA K. MUINDE | : | |
| | : | |
| Appellant | : | No. 1626 EDA 2017 |

Appeal from the Judgment of Sentence Entered April 13, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007454-2015

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                  **FILED JUNE 26, 2018**

Nyiva Muinde appeals from the judgment of sentence entered on April 13, 2017, after the trial court found her guilty of driving under the influence of alcohol or controlled substance ("DUI").[1] Muinde contends that there was insufficient evidence to support the trial court's guilty verdict. We affirm.

The following evidence was presented at trial. On October 11, 2015, Officer Michael Golden was working for the Eddystone Borough Police Department. N.T., Trial, 4/13/17, at 7-8. By 2015, Officer Golden had eight years of experience as a police officer, ten years of experience as a part-time Emergency Medical Technician ("EMT"), and five years of experience as a Red Cross instructor in emergency medical services. *Id.* While on patrol on October

---

*   Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

11, 2015, at around 11:20 p.m., he noticed a gray Honda sedan in a McDonald's parking lot. *Id.* at 8-9. Traffic passes through the lot in one direction only. *Id.* at 9. The vehicle was parked across two parking spaces and was facing against the flow of traffic. *Id.* The operator of the vehicle, Muinde, was slumped over the steering wheel, with her head almost touching the steering wheel. *Id.* at 9. It looked to Officer Golden as though she was sleeping. *Id.* The vehicle was running with the transmission in "drive," the headlights on, and the radio playing very loudly. *Id.* at 18.

Officer Golden approached the vehicle and tried to wake Muinde up by first announcing himself and then reaching through the partially opened window to shake her. *Id.* at 9. Muinde abruptly awakened and told Officer Golden that she was going home. *Id.* Officer Golden asked Muinde to place the vehicle in "park." *Id.* Muinde complied, and Officer Golden asked her multiple times to turn the radio down. *Id.* at 10. Muinde in response "would lean up almost like she was going to turn the radio down but then she would put her hand back down." *Id.* She tried again but still did not turn the radio down. *Id.* Officer Golden asked Muinde for her identification and proof of insurance, which she fumbled to find for several minutes. *Id.* Officer Golden also detected an odor of alcohol coming from the vehicle. *Id.*

Based on his observations of Muinde, Officer Golden asked Muinde to get out of her vehicle, on suspicion of driving under the influence. *Id.*

Lieutenant Pretti[2] arrived on scene to conduct two field sobriety tests. *Id.* at 11. Muinde was asked to perform only two sobriety tests because she had a cast on her foot. *Id.* at 13. She failed both tests. *Id.* at 14-16. Lieutenant Pretti asked Muinde to perform the ABC's test and instructed her to say the alphabet starting with the letter G. *Id.* at 22. Muinde was "unable to state from letter G to H and then J." *Id.* at 15. Additionally, she continually asked Officer Golden, "What letter again?" *Id.* Next, Lieutenant Pretti asked Muinde to perform the fingertip test, in which she was to put her hand out and count from one to five while touching her fingertips with her thumb. *Id.* at 15-16. During this test, Muinde "kept asking [Officer Golden] to repeat the test and would not touch her fingers in the order that was told." *Id.* at 16.

Officer Golden also attempted to administer a portable breath test. *Id.* However, Muinde was not able to perform this test either. Officer Golden explained how a portable breath test works and why Muinde was unable to perform the test:

> Q: . . . What do you have to do to pass that test or to administer that test?
>
> A: You have to breathe into the tube for it to register. [Muinde] was instructed [to] breathe in the machine like you're blowing up a balloon and she refused to do so and she kept asking how do you blow up a balloon.
>
> Q: And is that ---
>
> A: She would bite down --- I'm sorry.

---

[2] Lieutenant Pretti's first name does not appear in the record.

Q: I'm sorry. Go ahead.

A: She would bite down on the straw. She would suck in when she was told to breathe out.

*Id.* at 16-17.

Muinde admitted to Officer Golden that she had drunk one beer and he found one unopened bottle of beer in her purse. *Id.* at 13-14. Overall, Officer Golden observed that Muinde had a strong odor of alcohol on her breath, her eyes were bloodshot and glassy, her speech was slurred, her pupils were constricted, and she was uncooperative. *Id.* Based on his observations, Officer Golden concluded that Muinde was not capable of operating the vehicle. *Id.* at 19.

Muinde testified that she was a Type 1 diabetic and when her sugar level gets too high it causes her to go into a comatose-like state. *Id.* at 28, 30. She testified that she was parked in the McDonald's parking lot because she could feel herself having symptoms of high-sugar level. *Id.* at 30-31. She did not recall when Officer Golden approached her vehicle but testified that she was having a diabetic attack when she was speaking with Officer Golden. *Id.* at 31. She also testified that she performed the field sobriety tests satisfactorily. *Id.* at 33. Officer Golden testified that he did not attribute any of his observations of Muinde to her diabetes based on his experience as an EMT and working for Red Cross. *Id.* at 23.

The trial court found Muinde guilty of the above charge and sentenced her to five days to six months' incarceration. She was ordered to pay a $300 fine and $100 in court costs, to complete a safe driving class program, and to

- 4 -

J-S33026-18

undergo a prescreening evaluation for DUI offenders, as well as drug and alcohol evaluations. This timely appeal followed.

Muinde presents one issue for our review:

I.     Whether the evidence was insufficient to support the learned trial court's verdict of guilty of the charge of driving under the influence of alcohol because the Commonwealth did not prove beyond a reasonable doubt that [Muinde] did drive, operate[,] or [was] in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that [Muinde] was rendered incapable of safely driving, operating[,] or being in actual physical control of the movement of [Muinde's] vehicle?

Muinde's Br. at 6 (suggested answer omitted).

Because Muinde raises a challenge to the sufficiency of the evidence, our standard of review "requires that we evaluate the record 'in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.'" *Commonwealth v. Rahman*, 75 A.3d 497, 500 (Pa.Super. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super. 2005)).

To support a conviction under Section 3802(a)(1), the Commonwealth must prove "the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered

- 5 -

incapable of safely doing so due to the consumption of alcohol." ***Commonwealth v. Teems***, 74 A.3d 142, 145 (Pa.Super. 2013) (quoting ***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009)). The type of evidence that may satisfy this burden includes but is not limited to: "the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech." ***Segida***, 985 A.2d at 879.

Muinde contends that the Commonwealth's evidence regarding her actual physical control of the vehicle was limited to "a sleeping driver with her car in park." Muinde's Br. at 12. Muinde claims "the record does not represent that [Muinde's] vehicle was running" or contain "evidence of any lights on the car that were illuminated." ***Id.***

This is a misrepresentation of the facts of this case.[3] Contrary to Muinde's assertions, Officer Golden's trial testimony clearly reflects that Muinde's vehicle was in "drive," not "park" and that the officer asked her to place it in "park." N.T., Trial, 4/13/17, at 18. Additionally, there was evidence that Muinde's vehicle was running and that the headlights were on. ***Id.*** Thus, the record supports the trial court's conclusion that "the Commonwealth proved the first element by eliciting uncontroverted testimony from Officer

---

[3] Muinde also cites old case law, ***Commonwealth v. Byers***, 650 A.2d 468 (Pa.Super. 1994), contending that it controls in this case. ***See*** Muinde's Br. at 14. Our Supreme Court abrogated ***Byers*** in ***Commonwealth v. Wolen***, 685 A.2d 1384, 1386 n.4 (Pa. 1996).

Golden that he encountered [Muinde] seated in the driver's seat of her vehicle with the engine running and in gear." Trial Court Opinion, filed 1/24/18, at 2; *see Commonwealth v. Williams*, 871 A.2d 254, 261 (Pa.Super. 2005) (holding that evidence was sufficient to prove actual physical control of vehicle where defendant was found in his car at 4 a.m., with his head on steering wheel, headlights on, radio on, engine running, and vehicle parked diagonally across two parking spots).

Next, Muinde contends that the "impairment evidence offered by the Commonwealth [was] weak and boilerplate." Muinde's Br. at 15. Muinde claims that Officer Golden's use of "magic words" such as glassy eyes and slurred speech, and her failure of two field sobriety tests was insufficient to support Muinde's conviction, where Muinde "had been sleeping for an unknown period of time and her testimony about the onset of diabetic symptoms went unchallenged." *Id.* This argument might be correct if we were to look at only a portion of the trial record. However, we must look at the record as a whole and consider the evidence that the trial court actually received. *See Commonwealth v. Rodriguez*, 673 A.2d 962, 965 (Pa.Super. 1996) (concluding that when appellate court is presented with challenge to sufficiency of evidence, it must evaluate entire trial record and consider all evidence actually received).

When we look at the whole record, the evidence was plainly sufficient. While there was no testimony presented to rebut Muinde's testimony that she had diabetes, the trial court found Muinde's testimony that she was having a

diabetic attack not credible. Trial Court Opinion, filed 1/24/18, at 3. Instead, the trial court found that the Commonwealth "presented overwhelming evidence that [Muinde's] intoxicated state was created by her consumption of alcohol, and that, as a result, she was incapable of safely operating the vehicle which she controlled." *Id.* The trial court found that Muinde's impairment was evidenced by Officer Golden's observations of Muinde's glassy, bloodshot eyes; her slurred speech; the strong odor of alcohol on her breath; her vehicle being parked the wrong way; her uncooperative demeanor; and her failing both field sobriety tests. *Id.* Therefore, on this record, we cannot say that there was insufficient evidence to support the trial court's guilty verdict. *See Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa.Super. 2000) (concluding that evidence of defendant's glassy, bloodshot eyes, odor of alcohol, difficulty walking, and failed field sobriety tests was sufficient to sustain conviction for DUI).

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18

- 8 -