J-A05009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GLENNY GERARDO HERNANDEZ :
:
Appellant : No. 1639 EDA 2022

Appeal from the Judgment of Sentence Entered May 11, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007667-2019

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED MARCH 13, 2023**

Glenny Gerardo Hernandez appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after he was convicted, following a bench trial, of driving under the influence (DUI)—general impairment/unsafe driving (1st offense)[1] and failure to signal.[2] After careful review, we affirm.

On August 18, 2019, at approximately 1:00 a.m., Pennsylvania State Police Trooper Joseph Gilbert, was driving westbound on State Route 422 in Limerick Township, Montgomery County, when he observed Hernandez turn onto the exit ramp without signaling. N.T. Nonjury Trial, 5/11/22, at 11, 30. As Hernandez approached North Lewis Road at the end of the exit ramp, he

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] *Id.* at § 3334(a).

entered the right-turn lane and activated his left-turn signal.  Hernandez then turned right and entered the left lane instead of the right lane, both of which are right-turn only lanes.  *Id.* at 13.  Trooper Gilbert explained: "[t]he vehicle then turned right and entered the left lane instead of the right lane.  Vehicles are supposed to enter the closest lane of travel when they're turning right." *Id.*   At that point, Trooper Gilbert activated his lights and siren and, approximately 30 seconds later, Hernandez stopped his vehicle.  *Id.* at 14.

When Trooper Gilbert approached Hernandez's vehicle, he detected a strong odor of alcohol.  Hernandez stated that he was coming from a bar in Phoenixville and had consumed two IPA beers.  Trooper Gilbert noticed that Hernandez's eyes were glassy and his speech was "a little slurred." *Id.* at 19.

Trooper Gilbert performed two field sobriety tests on Hernandez:  the walk-and-turn test, and the one-legged stand test.  Hernandez exhibited four signs of impairment during the walk-and-turn test (commencing test prior to being instructed to do so; walking 15 steps instead of 9 during first part of test; walking 17 steps instead of 9 after the turn; and stepping off imaginary line), and he exhibited all four indicators of impairment during the one-legged stand test (hopping, swaying, putting foot down, and using arms for balance). *Id.* at 22-23.

Trooper Gilbert testified that he had received training in the detection of impaired drivers at the state police academy.  Since graduating from the police academy, he completed training in Advanced Roadside Impaired Driving Enforcement (ARIDE), which instructs on drug detection for roadside

impairment. *Id.* at 8-9. During the course of his career with the Pennsylvania State Police, Trooper Gilbert has made approximately 100 DUI arrests. During the course of his law enforcement career, he has administered, or assisted with the administration of, the walk-and-turn and one-legged stand field sobriety tests in excess of 200 times. *Id.* at 8-10, 20.

Based on his experience and observations, Trooper Gilbert believed Hernandez was incapable of safe driving. *Id.* at 28. Hernandez refused a breathalyzer test, and Trooper Gilbert placed Hernandez in custody and transported him to the Skippack Barracks. *Id.* at 24-26, 50, 57. There, Trooper Gilbert read Hernandez the PennDOT DL-26 form, which sets forth the penalties imposed if a blood alcohol content (BAC) test is refused. Hernandez refused to sign the form. Trooper Gilbert then signed the form in the section where it indicates the operator refused to sign after being advised of the penalties. *Id.* at 26-27.

Following a one-day nonjury trial, the court convicted Hernandez of the aforementioned charges and sentenced him on May 11, 2022, to six months' probation. Hernandez filed a timely post-sentence motion, which was denied, and this timely appeal followed. Both Hernandez and the trial court complied with Pa.R.A.P. 1925.

On appeal, Hernandez challenges the sufficiency of the evidence with respect to his DUI conviction. *See* Appellant's Brief, at 3, 8. He argues the evidence did not establish that he was incapable of safe driving beyond a reasonable doubt. Hernandez relies on this Court's en banc decision in

*Commonwealth v. Gause*, 164 A.3d 532 (Pa. Super. 2017), wherein this Court concluded that there was insufficient evidence to support the defendant's DUI conviction. *Id.* at 540-42.

Our standard of review regarding a sufficiency challenge is as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. The evidence established at trial need not preclude every possibility of innocence and the factfinder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the factfinder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011). Moreover, in applying the above standard, the entire record must be evaluated and all evidence actually received must be considered. *Commonwealth v. Banks*, 253 A.3d 768, 774 (Pa. Super. 2021).

Section 3802(a)(1) of the Vehicle Code provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). To establish the second element, the Commonwealth must show that alcohol has

> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Id.* (citations and footnote omitted). *See Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009) (Commonwealth must prove accused was driving, operating or in physical control of movement of vehicle during time when he was rendered incapable of safely doing so due to consumption of alcohol). Moreover, this Court has stated, "Evidence of erratic driving is not a necessary precursor to a finding of guilt under [DUI—general impairment]. The Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test." *Mobley*, 14 A.3d at 890.

Additionally, 75 Pa.C.S.A. § 1547(e) provides that a defendant's refusal to submit to a BAC test may be used as evidence against the defendant:

In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a)(6) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence[,] but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

Furthermore, our Supreme Court has stated:

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol; and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. . . . The weight to be assigned these various types of evidence presents a question for the factfinder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Segida*, 985 A.2d at 879.

In **Mobley**, a police officer executed a traffic stop of the defendant after observing him coast through a stop sign. **Id.** at 889. Upon approaching the vehicle, the officer detected the odor of alcohol. **Id.** The defendant's speech patterns were slow and he appeared disoriented. **Id.** The officer requested defendant undergo field sobriety tests, and defendant failed all four tests. **Id.** After his arrest, the defendant refused to submit to a BAC test. **Id.** The trial

court convicted the defendant of two counts of DUI—general impairment. *Id.* On appeal, this Court affirmed, noting that the defendant "failed four separate field sobriety tests, smelled of alcohol, and proceeded to coast through a stop sign despite a police officer being in plain view." *Id.* at 890.

Here, as in *Mobley*, Trooper Gilbert saw Hernandez commit multiple traffic violations, noticed an odor of alcohol as he approached Hernandez's vehicle, and observed that Hernandez's speech was slurred and his eyes were glassy. Trooper Gilbert testified that, based on his experience and observations, combined with Hernandez's failure of field sobriety testing, Hernandez was incapable of safe driving. *See Commonwealth v. Butler*, 856 A.2d 131, 137 (Pa. Super. 2004) (police officer who has perceived defendant's appearance and conduct is competent to express opinion, in a prosecution for DUI, as to defendant's state of intoxication and ability to safely drive vehicle). Further, in both cases, the drivers failed at least two field sobriety tests and refused a BAC test. *Mobley*, 14 A.3d at 889. *See also* 75 Pa.C.S.A. § 1547(e).

*Gause*, on which Hernandez relies, is inapposite. There, the testimony showed that the Gause had stopped at a lighted intersection, with his headlights and turn signal properly activated. After Gause executed the turn, the officer stopped him when she saw that, although his brake lights were functioning, his taillights were not illuminated. *Gause*, 164 A.3d at 535. Further, unlike the instant case, the officer in *Gause* testified that when she activated her lights, Gause properly signaled and pulled over immediately to

the curb. *Id.* at 538. When the officer approached Gause, she testified that she smelled alcohol, and Gause acknowledged he had consumed a 12–ounce Coors Light beer about a half hour earlier at a friend's home, from where he was coming. *Id.* at 541. Unlike the case before us, there was no testimony that Gause's eyes were bloodshot or his speech was slurred. The officer testified that Gause was not "alcohol impaired," and that the results of his field sobriety tests were "inconsistent," because, as the officer acknowledged, "Gause's leg injury could affect his ability to perform the walk-and-turn test and the one-leg stand test, and, thus, could affect the reliability of those tests." *Id.* at 537. At trial, the officer stated that she asked Gause if he had any physical limitations and he told her that "he had been shot in one of his legs . . . ten years ago[.]" *Id.* at 535 n.5.

Contrary to Hernandez's argument, the facts in *Gause* do not align with those in his case. After evaluating the record, viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support Hernandez's conviction for DUI—general impairment beyond a reasonable doubt. *See Mobley*, 14 A.3d at 889. *See also Commonwealth v. Feathers*, 660 A.2d 90 (Pa. Super. 1995) (defendant's glassy eyes, slurred speech, odor of alcohol, inability to stand without support and failure of field sobriety tests was sufficient to support DUI conviction). Accordingly, we affirm Hernandez's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/13/2023</u>