J-S13006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREG ALAN PORTER | : | |
| | : | |
| Appellant | : | No. 692 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 18, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000517-2022

BEFORE: KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: May 29, 2024**

Appellant, Greg Alan Porter, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on January 18, 2023. We affirm.

The relevant facts and procedural history are as follows: On October 16, 2021, at about 2:00 a.m., in Pitcairn, Allegheny County, Pennsylvania, Appellant was arrested and charged at Count 1: Driving Under the Influence [DUI]: General Impairment (M), 75 Pa.C.S. § 3802(A)(1); Count 2: Driving While Operating Privilege is Suspended or Revoked (S), 75 Pa.C.S. § 1543(B)(1)(i); Count 3: Reckless Driving (S), 75 Pa.C.S. § 3736(A); Count 4: Careless Driving (S), 75 Pa.C.S. § 3714(A); Count 5: Driving at Safe Speed

_____

[*] Former Justice specially assigned to the Superior Court.

(S), 75 Pa.C.S. § 3361; Count 6: Disorderly Conduct (S), 18 Pa.C.S. § 5503(A)(1); and Count 7: Harassment (S), 18 Pa.C.S. § 2709(A)(1).

A nonjury trial commenced on December 15, 2022. One of the arresting officers, Pitcairn Borough Police Officer Brenden Linebarger, testified for the Commonwealth. N.T. at 8. He testified that on October 16, 2021, at 1:59 a.m., he and Officer Kris Dick were on traffic patrol near Broadway Boulevard. N.T. at 8, 13, 25. The officers observed a black Dodge pickup truck coming towards them on Center Avenue and heard it squeal its tires as it made a sharp turn onto Second Street. N.T. at 8. The officers saw the truck spin its tires and perform "burnouts" which caused the tires to smoke. N.T. at 26, 35. Approximately thirty seconds later, the officers heard the tires squeal again as the car seemingly traveled farther away from them and turned down the next connecting street. N.T. at 9. The truck came into the officers' view a second time and squealed its tires for a third time as it again traveled the same path towards them down Center Avenue and again turned onto Second Street. N.T. at 9-10. Officer Linebarger testified that squealing tires is an indication that the vehicle's driver "was probably driving at a fast speed and taking the turn too sharp without slowing down," given that the speed limit on the residential street was twenty-five miles per hour and it had just rained. N.T. at 9, 13. The officer did not clock the speed of the truck but testified that it was "definitely" traveling over twenty-five miles per hour. N.T. at 22, 46.

The officers received a call which they concluded was regarding the same truck, so they followed the truck's path. N.T. at 10-11, 35. They found

the truck parked on Second Street and saw Appellant exiting the vehicle. N.T. at 11. The officers confronted Appellant as to why he was driving in that manner, and he became irritated and stated that the officers were harassing him and trying to make something out of nothing. N.T. at 12. The hood of Appellant's parked vehicle felt "burning hot" to Officer Linebarger. N.T. at 16. Appellant began walking away from them, walked through a yard, and entered an alleyway between Second and Third Street. N.T. at 13. The officers told Appellant to stop, and that they were conducting a stop so he had to identify himself. They asked him about his erratic driving behavior and why he was going in circles. N.T. at 14. Appellant told the officers to "fuck off," insisting that he did not know what they were talking about and that he did not need to identify himself. N.T. at 15. Appellant was "being very belligerent" and "screaming and yelling." N.T. at 16. The vehicle was not registered to Appellant, and he claimed the truck belonged to his boss. N.T. at 40. The officers discovered he did not have a valid license. N.T. at 23.

Officer Linebarger testified that Appellant seemed impaired and was "stumbling around" as he was standing. N.T. at 15. The officers observed a jar of suspected marijuana on the front passenger seat and a bottle of liquor on the back seat of the pickup truck. N.T. at 16-17. Appellant stated that the marijuana and liquor were his but then stated that the liquor belonged to someone else. N.T. at 18. He informed the officers that it was his birthday and that he had been partying earlier in the night but alleged that he had not consumed any alcohol in a few hours. N.T. at 17. The officers told Appellant

that they suspected him of DUI and asked him if he would sign a DL-26 form to submit to a blood draw, which he did sign. N.T. at 19. On cross examination, Officer Linebarger agreed that Appellant had the smell of alcohol. N.T. at 44. The officers did not conduct any field sobriety tests because they did not believe Appellant could safely complete them due to him already being belligerent and staggering, and because he already admitted to having consumed alcohol. N.T. at 19, 41. Officer Linebarger placed Appellant in the back of the police vehicle and began traveling to Forbes Hospital. N.T. at 20.

On route to the hospital, Appellant changed his mind about the blood draw and asked to instead be taken to jail. N.T. at 20. He stated that his last DUI cost him over $9,000 and he would rather go to jail than go through another DUI. N.T. at 21. Appellant then began making suicidal statements. He stated that he would kill himself but that "it may not be today, it may not be tomorrow, but it could be any time." N.T. at 21. Upon hearing these statements, the officers determined that Appellant was a danger to himself and brought him involuntarily to the mental health wing of Forbes Hospital to be "302'd." N.T. at 48. No blood draw was taken for purposes of the DL-26. N.T. at 21-22. Officer Linebarger and the hospital staff had to "wrestle" Appellant onto the hospital bed, and he had to be strapped down and sedated because of his behavior. N.T. at 48.

Following the bench trial, Appellant was found guilty of DUI, driving while operating privilege suspended or revoked, and reckless driving. At sentencing on January 18, 2023, the court vacated its verdict for reckless

driving and, upon the agreement of both parties, amended the count to a summary disorderly conduct. Appellant was sentenced to a six-month period of probation for the DUI conviction, sixty days' incarceration with time served for driving while operating privileges suspended or revoked, and a concurrent ninety-day probationary term for disorderly conduct. Appellant filed a post-sentence motion on January 30, 2023. The motion was denied by operation of law on May 31, 2023. Appellant filed a timely notice of appeal to this Court on June 12, 2023. On July 19, 2023, Appellant filed his concise statement of errors complained of on appeal. On October 16, 2023, the trial court issued its Rule 1925(a) opinion. This appeal followed.

Appellant raises this issue for our review, verbatim:

> WAS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AT COUNT 1 - DUI BECAUSE THE COMMONWEALTH DID NOT PROVE BEYOND A REASONABLE DOUBT THAT MR. PORTER IMBIBED A SUFFICIENT AMOUNT OF ALCOHOL SUCH THAT HE WAS RENDERED INCAPABLE OF SAFE DRIVING?

Appellant's Br. at 6.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa. Super. 2010) (citations omitted).

Section 3802(a)(1) of the Vehicle Code provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). To establish the second element, the Commonwealth must show that alcohol has:

substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Id.* (citations and footnote omitted).

- 6 -

Specifically, Appellant argues that because no field sobriety tests were performed, and no breathalyzer or blood draw was administered, the Commonwealth failed to prove that Appellant imbibed in an amount of alcohol rendering him incapable of driving safely. Appellant's Br. at 17-18. We disagree. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude the evidence sufficiently establishes Appellant's consumption of alcohol substantially impaired his ability to safely operate the vehicle. The trial court aptly stated in its opinion:

> Two Officers saw and heard a black truck moving erratically on wet streets, squealing, spinning tires to burnout, speeding around four (4) corners dangerously in a small residential neighborhood rounding back toward them where they first (1st) saw and heard the truck. The Officers pursued and caught the vehicle. Pitcairn is a small borough. Defendant was coming from the rear driver's side panel of the vehicle whose hood was burning hot. Defendant had the keys and said it was his boss' truck. Defendant claimed ownership of the marijuana and alcohol both found in plain view in the vehicle although he changed his statement about the alcohol. He, also, admitted to partying and drinking, to celebrating his birthday earlier in the day with friends. Defendant immediately attempted to avoid the encounter with the Officers, walked away, said they were harassing him and trying to make something out of nothing, as though there was something to be made. He yelled, screamed and cursed at the Officers, smelled of alcohol, stumbled, was held up by the Officers. On the ride to the hospital, after agreeing to submit to blood tests, Defendant said he changed his mind, would rather go to jail and ranted about the nine thousand ($9000.00) dollars his last DUI cost him. Defendant's statements and behavior progressed and escalated to threats to take his life requiring the Officer to file a 302 Petition for psychiatric evaluation and potential involuntary commitment. At the hospital, Defendant became so highly volatile that he required being subdued, restrained and sedated.
> We find the Officers acted calmly and appropriately. We find the testimony of the Officer credible. We find that the Commonwealth established each element of the offenses charged

beyond a reasonable doubt. Thus regarding the specific elements Defense complains to be insufficient in both alleged errors one (1) and two (2), we find the Commonwealth established both elements using the totality of the circumstances.

Regarding error one (1), Defense does not believe the Commonwealth proved beyond a reasonable doubt that Defendant imbibed a sufficient amount of alcohol that rendered him incapable of driving. The absence of testing, the SFSTs and blood tests, is not because the Officers ignored these. Rather, that Defendant did not seem to be safe to do SFSTs and he created a dangerous situation for himself, the police and others, as evidenced by his behavior. His behavior seemed to be the behavior of one who is impaired. And, his behavior escalated all the way to the hospital, as well as, at the hospital. So, for the safety of the Defendant, the Officers did not conduct the SFSTs and even though Defendant agreed to the blood tests, he withdrew his consent and his behavior did not allow for that to happen.

Here, the sufficient impairment of the Defendant is established by showing impairment by alcohol to a degree that rendered the defendant incapable of safe driving, which may be shown by evidence establishing a "substantial impairment" of the defendant's judgment or enfeeblement in the defendant's ability to exercise that judgment, to deliberate or to react prudently to changing circumstances and conditions. We find that Defendant drove the vehicle. The Officers observed him driving erratically and dangerously, squealing tires, spinning tires to burnout, turning sharp corners quickly screeching tires on streets after it had rained around four corners in a circle, in essence, playing erratically and loudly while driving without regard for the danger to the residents and property in the community and the noise within the community at 2:00 a.m. in the morning. When Officers pulled up and caught Defendant coming from the truck, Defendant immediately began walking away, was not cooperative to answer questions, responded saying, "...you are trying to make something out of nothing...", as though there was something to be made, and became increasingly belligerent, cursing at Officers, yelling, shouting and screaming behind houses in a residential neighborhood at 2:00 a.m. Defendant was ambivilant [sic] about ownership of the alcohol, first saying it was his, then saying it was not his. And finally, Defendant said he would submit to blood tests, signed the DL26 form, then changed his mind in the patrol car on the way the hospital, became highly inflamed saying that he would rather go to jail, and that he would harm himself, further escalating the situation at the hospital where he had to be

subdued, restrained and sedated. All of these behaviors taken together show Defendant's inability to exercise judgment and/or show enfeeblement in the Defendant's ability to exercise judgment or to deliberate or to react prudently to the changing circumstances and conditions. Whatever the Defendant's thought process or lack thereof, he seemed to exhibit a fear that drove him to verbalize suicidal threats that warranted the Officer file a 302 Petition when they arrived at the hospital preventing any further thoughts of attempting to acquire blood or testing. Perhaps that was Defendant's intention. His statements about his last DUI and the costs gave the impression that he would do anything to avoid a repeat of those circumstances.

Tr. Ct. Op. at 9-12.

Here, the totality of the circumstances, viewed in the light most favorable to the Commonwealth as verdict winner, established that there was sufficient evidence for the trial court as fact-finder to find that Appellant was under the influence of alcohol such that his driving would be unsafe. Appellant points to common indicators that one is under the influence, and argues that some of those indicators were not present in his situation. Appellant's Br. at 12. Appellant submits that no field sobriety or blood tests were done, there was no testimony that Appellant had glassy eyes or slurred speech, there was no evidence that he swerved or weaved on the roads or crossed the lines, and the only alcohol he admitted to consuming was an unknown amount of beer five-and-a-half hours before the police encounter. Appellant also offers various reasons why truck tires may squeal on a wet road unintentionally. Appellant's Br. at 15-17. It is well established that

the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and

- 9 -

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Hughes***, 908 A.2d 924, 928 (Pa. Super. 2006).

The trial court's conclusions are supported by the record, and the trial court stated that it found Officer Linebarger's testimony credible. We may not reweigh the evidence or substitute our judgment for that of the trial court. ***Brooks, supra***. Accordingly, we conclude there was sufficient evidence to enable the trial court to find Appellant was DUI.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/29/2024

- 10 -