J-S20025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NELSON VELEZ JR. | : | |
| | : | |
| Appellant | : | No. 1496 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 3, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0000196-2023

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: AUGUST 6, 2024**

Nelson Velez, Jr. appeals from the judgment of sentence of six months' probation (with 10 days of house arrest) and $1,100 in fines, after the trial court convicted him of driving under the influence ("DUI") and related offenses.[1] Because the Commonwealth produced legally sufficient evidence of DUI, we affirm.

Around 2:30 a.m. on October 30, 2022, Velez was driving from a Halloween party where he drank beer. His friend was riding in the passenger seat. A police officer stopped the vehicle, due to a burnt-out headlight and a burnt-out license-plate bulb.

When the officer approached the passenger's window, he smelled the aroma of alcohol wafting from the car. The officer also smelled the aroma of

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 4107(b)(2), 3802(a)(1).

"heavy masking odors in the vehicle [*i.e.*,] cologne and air fresheners . . . ." N.T., 7/25/23, at 12. Based on his training and experience, the officer knew that intoxicated drivers may spray such masking odors to hide the smell of alcohol.

The "passenger had the immediate appearance of an impaired person," while Velez "had bloodshot eyes." *Id.* at 11. The officer requested a driver's license from Velez, and he produced it. The officer asked him to exit the car. Once Velez was outside the car, the officer "noticed the odor of alcoholic beverage emanating from him." *Id.* at 14.

The officer had Velez perform a "three-test battery, consisting of a check for Horizontal Gaze Nystagmus, a one-leg stand, and a walk and turn . . . ." *Id.* The officer videoed the field sobriety tests, but the Commonwealth did not admit the video into evidence. *See id.* at 29, 36. During the one-leg-stand test,[2] Velez swayed, which is one of four clues of impairment. However, for someone to demonstrate impairment during the one-leg-stand test, the "threshold is two out of four" clues. *Id.* at 29.

Regarding the walk-and-turn test, there are eight possible clues. Velez demonstrated five of them. He "missed heal-to-toe contact, stepped off line, performed an incorrect number of steps, performed an improper turn, and stopped walking after his first nine steps and before the turn." *Id.* at 15.

---

[2] The Commonwealth produced no evidence regarding the results of the HGN test.

After the field sobriety tests, the officer asked Velez to blow into a breathalyzer. He blew three times, but no attempt generated a Blood Alcohol Content ("BAC") reading. As a result, the officer manually triggered the device, and the reading "was positive for the presence of alcohol," at a BAC of .053. *Id.*; *see also id.* at 30.

The officer arrested Velez for DUI and transported him to a hospital. Once in the emergency room, the officer presented Velez with the PennDOT DL-26-B Form, read him the warnings therein, and asked if he would submit to blood testing. Velez, who is a nurse, refused "to submit to what he described [to the officer] as an . . . invasive treatment . . . ." *Id.* at 21.

As a last resort, the officer took Velez to a neighboring police station to perform "an evidential breath test." *Id.* at 21. The officers at the station provided Velez with the PennDOT DL-26-A Form, read him the warnings therein, and asked if he would submit to the breath test. Velez refused for "a variety of reasons . . . ." *Id.* at 24.

The Commonwealth charged Velez with DUI (general impairment by consumption of alcohol) and with two counts of operating a vehicle with unsafe equipment (the burnt-out headlight and the burnt-out license-plate blub). The matter proceeded to a bench trial, and only the arresting officer testified for the Commonwealth. The officer did not testify that Velez drove in an unsafe manner or that Velez was so intoxicated that, in the officer's opinion, he was incapable of safely driving.

The trial court convicted Velez on all counts and sentenced him as described above. This timely appeal followed.

Velez raises one issue: "Whether the Commonwealth presented sufficient evidence that [he] was under the influence of alcohol to a degree that rendered him incapable of safely driving when the field sobriety tests provided inconsistent results and the police officer never provided his opinion . . . that Velez was . . . incapable of safely driving?" Velez's Brief at 4.

Due to the absence of opinion testimony, Velez contends his conviction for DUI must be overturned. He states the arresting officer was competent to render an "opinion on this topic if he believed Velez was impaired" based on *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). Velez's Brief at 14. Because the officer's opinion is not in evidence, Velez contends that the Commonwealth had no proof he was incapable of safely driving, much less that alcohol consumption caused such an incapability. Without the officer "explaining why his training and experience would lead him to believe a person was impaired to a degree that rendered them incapable of safely driving [there] is not sufficient evidence to sustain the conviction." *Id.* at 16.

The Commonwealth disagrees. In its view, opinion testimony from the arresting officer was not required, as matter of law, to prove that Velez was rendered incapable of safely driving by the alcohol he consumed. Instead, the Commonwealth claims it "may carry its burden by demonstrating that [Velez] failed field sobriety testing." Commonwealth's Brief at 10 (citing *Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2000), and

- 4 -

***Commonwealth v. Giron***, 155 A.3d 635 (Pa. Super. 2017). According to the Commonwealth, by having bloodshot eyes, smelling of alcohol, failing the walk-and-turn test, and refusing post-arrest chemical testing, Velez provided sufficient circumstantial evidence from which the trial court, as the finder of fact, could reasonably infer that he was incapable of safely driving. ***See id.*** at 11-12.

"Because evidentiary sufficiency is a question of law, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). We "must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1151 (Pa. Super. 2020). However, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt." ***Id.*** at 1151–52.

The General Assembly has directed that an "individual may not drive . . . a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving . . . the vehicle." 75 Pa.C.S.A. § 3802(a)(1). To convict someone under that subsection, the Commonwealth must prove that the individual drove a vehicle "when he or she was rendered incapable of safely doing so due to the consumption of alcohol." ***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Regarding that

element of the offense, "it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." *Palmer*, 751 A.2d at 228.

Because subsection 3802(a)(1) is a general-impairment provision, it imposes "no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Segida*, 985 A.2d at 879. "The types of evidence that the Commonwealth may proffer . . . include but are not limited to, the following:  the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech." *Id.* "The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony." *Id.* "Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol — not on a particular blood alcohol level." *Id.*

Here, the Commonwealth presented evidence of Velez's actions, inability to complete a sobriety test properly, and physical appearance.  Regarding Velez's actions, he admitted that he was coming from a Halloween where he

consumed beer. Thus, the Commonwealth proved that Velez imbibed alcohol prior to driving the vehicle.

Next, the officer testified that, during the walk-and-turn test, Velez missed heal-to-toe contact, stepped off the line, took the wrong number of steps, performed an improper turn, and stopped walking at the wrong time. From this, the trial court, as the sole finder of fact, was free to infer that the alcohol Velez drank "substantially impaired [his] normal mental and physical faculties required to safely operate the vehicle." *Palmer*, 751 A.2d at 228. "Evidence that the driver was not in control of himself, such as failing to pass *a* field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving." *Id.* (emphasis added). Velez gave five indicia of impairment during the walk-an-turn field sobriety test. As such, he showed, beyond reasonable doubt, that he was incapable of safely driving, despite his successful completion of the other two tests.

Additionally, Velez's appearance of bloodshot eyes and the odor of alcohol emanating from his person offered further credence to the trial court's finding that he had consumed too much alcohol to drive safely. Based on the trial judge's life experience and common sense, he presumably knew that sober drivers do not exhibit such signs of intoxication. *See Segida*, *supra*. Therefore, the trial court could rationally conclude that, Velez was not a sober driver, because he displayed those signs of intoxication.

Finally, the trial court was free to infer Velez's consciousness of guilt when he refused the blood draw test and the evidentiary-breathalyzer test. *See generally*, *Com. v. Bell*, 211 A.3d 716 (Pa. 2019).

The combination of the forgoing facts, viewed in the light most favorable to the Commonwealth, is sufficient proof beyond reasonable doubt that Velez was incapable of safely driving his vehicle. Hence, the Commonwealth did not need to ask the officer his opinion on Velez's degree of impairment to sustain the DUI conviction.

Velez's sole appellate issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/06/2024